44 N.J. Super. 435 (1957)
130 A.2d 893
SADIE DAVIS, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, MARLBORO STATE HOSPITAL, DEPARTMENT OF INSTITUTIONS AND AGENCIES, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1957.
Decided April 15, 1957.
*437 Before Judges GOLDMANN, FREUND and CONFORD.
*438 Mr. Thomas F. Shebell argued the cause for petitioner-appellant.
Mr. Christian Bollermann, Deputy Attorney-General, argued the cause for respondent-respondent (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
Petitioner's claim for workmen's compensation as a state employee was denied in the Division of Workmen's Compensation on the ground of lateness of filing of claim, within N.J.S.A. 34:15-34. The Monmouth County Court affirmed.
The following pertinent facts are undisputed. Between November 1949 and February 1950 petitioner was an employee of the State, attending tubercular patients at the New Jersey State Hospital at Marlboro. As a result of the exposure she contracted tuberculosis, leaving state employment October 1, 1950. Thereafter she was hospitalized in various public institutions for treatment and surgery and she is still ill and under treatment. Certainly by January 1952, and probably a year before, she knew her condition was connected with the exposure at Marlboro. The petition for compensation as for an occupational disease was filed September 28, 1954. So far as material the controlling provisions of N.J.S.A. 34:15-34 read as follows:
"All claims for compensation for compensable occupational disease shall be barred unless a petition is filed in duplicate with the secretary of the workmen's compensation bureau * * * within two years after the date on which the employee ceased to be exposed in the course of employment with the employer to such occupational disease * * * or within one year after the employee knew or ought to have known the nature of his disability and its relation to his employment, whichever period is later in duration. In case an agreement of compensation for compensable occupational disease has been made between such employer and such claimant, then an employee's claim for compensation shall be barred unless a petition for compensation is duly filed * * * within two years after the failure of the employer to make payment pursuant to the terms of such agreement; or in case a part of the compensation has been *439 paid by such employer, then within two years after the last payment of compensation.
Notwithstanding any provision of this section hereinabove set forth, all claims * * * shall be forever barred unless a petition is filed * * * within five years after the date on which the employee ceased to be exposed * * * to such occupational disease."
It is apparent that the petition was not filed within either two years after exposure to the disease or one year after petitioner knew the nature of the illness and its relation to her employment. It is argued, however, that the five-year period mentioned in the last quoted paragraph of the section makes the present claim timely. The construction is patently inadmissible. The reference relied upon does not purport to be in substitution for the previously specified limitation periods, a result which would make the latter surplusage, but only to qualify those provisions so as to bar claims filed more than five years after exposure even though not more than one year after knowledge, etc.
It is next contended that the claim is saved by application of the statutory provision concerning agreements for compensation between the parties. The factual support for the position is this. On January 12, 1951 petitioner wrote from Allenwood Hospital to Mr. Joseph Bocchetti, personnel director at Marlboro Hospital, inquiring, "if I am eligible for any disability benefits from the compensation that Insurance covers in the Hosp." Bocchetti replied January 16, 1951, enclosing certain forms for her signature and stating: "These papers are for the purpose of filing a claim for workmen's compensation." Petitioner signed them and apparently returned them to Bocchetti. The only indication before us as to what these forms were is their description by respondent as a set of carbon copies of certain typed-in forms approved by the Division of Workmen's Compensation, Form No. 1 for the purpose of reporting an accident, and Forms No. 2 and No. 3 being agreements by the employer to pay and by the employee to accept stipulated amounts of compensation. These were introduced in evidence by *440 respondent for the purpose of establishing petitioner's knowledge of the work-related nature of her disease as of January 16, 1951, the date which the forms bear. Respondent informs us that the practice is for Form No. 2 to be filed where agreement for compensation is reached and Form No. 3 if the terms of settlement are approved by the Division. The particular copy of Form No. 2 in the present record bears the typewritten name, "H.L. O'Connor, Business Mgr. N.J. State Hospital, Marlboro," at the place indicated by the form for "signature of employer or insurance carrier." The form was obviously prepared unintelligibly and ineffectively if for settlement purposes as the answers to both the questions, "State the amount of weekly wages" and "State the weekly compensation to be paid the injured," are given as $190 per month.
There was no testimony at the hearing by either Mr. Bocchetti or Mr. O'Connor. It is represented to us by respondent that inquiry fails to discover the originals of either Form No. 1 or Form No. 2 and that none of the forms were filed with the Division. It is obvious that no "agreement of compensation" was ever in fact made between the parties (petitioner testified she did not read the forms when she signed them), although petitioner would certainly appear, as of January 1951, to have been justifiably relying upon the State to do whatever was required to process her claim for compensation. But she was never paid any money purported to represent compensation  only her salary, which was continued until October 31, 1951. We cannot find from what is before us that "an agreement of compensation" was made, within the meaning of N.J.S.A. 34:15-34, which would extend the period of limitations for two years after "the failure of the employer to make payment pursuant to the terms of such agreement; or in case a part of the compensation has been paid by such employer, then within two years after the last payment of compensation."
Even were there a basis to find that an agreement had been made between petitioner and the State for compensation, the statute would nevertheless raise a bar since *441 more than two years has elapsed since January 1951, when the supposed agreement was made, no payments having been made thereon since. We are in disagreement with the petitioner's contention that since the agreement was to make payments indefinitely the statutory "failure of the employer to make payment" may therefore be regarded as continuous during the period in which payments are not being made, thereby extending the limitation period indefinitely. Such a construction would subvert the plain purpose of the limitation provision. The statute means that the limitation period begins to run as soon as there is any failure to make a payment due under the agreement. To the extent that the decision in Zietko v. Jacques Wolf Co., 23 N.J. Misc. 354 (W.C.B. 1945), may be regarded as holding that the running of limitations is necessarily suspended during the entire period for which compensation was agreed to be paid, it is disapproved.
Petitioner has also argued that the period of limitations was extended by virtue of provision of "medical treatment" by the State to her as late as May 1954, at Allenwood Hospital, a Monmouth County institution, thus making the claim timely, within Pfahler v. Eclipse Pioneer Division of Bendix Aviation Corp., 21 N.J. 486 (1956). But we are unable to concur in the reasoning by which petitioner derives the conclusion that the State provided the care at Allenwood. This is posited upon the statutory financial aid which the State grants to county institutions of that type generally. The argument is strained and without merit.
The final reliance by petitioner is upon the basis of estoppel. The pertinent facts relied upon have already been stated. It should be noted, however, that subsequent to the sending in of the forms mentioned above, and before the expiration of the statutory limitation period, Mr. Bocchetti wrote petitioner twice suggesting she obtain legal advice concerning the possibility of obtaining workmen's compensation. She therefore cannot be said to have let the filing period pass in the justified belief that the matter was being taken care of for her by the State. But the dispositive *442 consideration is that the bar of limitations is absolute in the case of a statutory tribunal like the Division of Compensation, going to jurisdiction, and being therefore beyond estoppel or any other equity. Riccioni v. American Cyanamid Co., 26 N.J. Super. 1, 5 (App. Div. 1953); cf. Nagy v. Ford Motor Co., 6 N.J. 341 (1951). We need not mention the very limited scope of estoppel when sought to be raised against the State. See City of Bayonne v. Murphy & Perrett Co., 7 N.J. 298, 311 (1951).
The situation of this petitioner is pitiable, but we are powerless to help her in the circumstances. There would appear to be a moral obligation on the part of the State in this case, but only the Legislature can appropriate the funds to meet it.
Affirmed; no costs.