117 N.J. Super. 485 (1971)
285 A.2d 83
CHARLES HANNAN AND RUTH E. HANNAN, HIS WIFE, PLAINTIFFS,
v.
EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY AND UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 8, 1971.
*486 Messrs. Hein, Smith, Mooney & Berezin, attorneys for plaintiffs.
Messrs. Bennett & Bennett, attorneys for defendant Employers Commercial Union Insurance Company.
Messrs. Shenier, Gilady and Harwood, attorneys for defendant, Unsatisfied Claim and Judgment Fund Board.
TOSCANO, J.C.C.
This is a declaratory judgment action brought by plaintiffs Charles and Ruth E. Hannan to determine the respective obligations of defendants, Employers Commercial Union Insurance Company and the Unsatisfied *487 Claim and Judgment Fund Board to afford plaintiffs either contracted insurance coverage or uninsured motorist protection.
The facts disclose that on or about May 14, 1969 plaintiff Ruth E. Hannan sustained personal injuries as a result of a motor vehicle collision that occurred in New Jersey with an automobile operated by Carol E. Pecile and owned by Kathryn Puglisi. Both of these women are uninsured and were uninsured motorists at the time of the accident. The Unsatisfied Claim and Judgment Fund Board therefore entered an appearance on their behalf.
Plaintiffs, on the other hand, were covered at the time of the accident by a policy issued by Employers Commercial Union Insurance Company. This company had been handling the plaintiffs' automobile insurance since at least 1965.
In March 1968 an agent of the company, Michael Fitzgerald, discussed with plaintiffs the addition of family protection coverage to their automobile policy. He explained that such coverage provided for damages arising from an accident with an uninsured motorist, but pointed out that such protection was not available for accidents that occurred in New Jersey.
On March 4, 1968 plaintiffs' policy was effectively changed in order to include family protection coverage. When the policy was renewed for the period August 22, 1968 to August 22, 1969, this same provision was afforded plaintiffs at an additional charge of $2. Annexed to the renewed policy as a rider was an endorsement that read:
It is agreed that such insurance as is afforded by the Family Protection Coverage with respect to an automobile principally garaged in the State of New Jersey, does not apply to any accident occurring in the State of New Jersey.
The wording in the policy of the coverage itself does not expressly contain the above exclusion. However, the New Jersey statute, in effect up until 1969, that authorized insurance companies to provide for such uninsured motorists' *488 coverage, specifically restricted this authorization to accidents occurring outside New Jersey.
The above restriction was deleted from N.J.S.A. 17:28-1 by an amendment approved January 2, 1969, effective April 2, 1969. In addition, the amendment created two new sections, N.J.S.A. 17:28-1.1 and 1.2, which respectively require insurance companies to offer uninsured motorists' coverage before delivering or issuing for delivery an automobile liability policy in New Jersey, and then to obtain a written election from the named insured either rejecting or accepting the required offer.
The issue raised by the instant action is whether the above cited statutory amendment is applicable to this situation so as to impose upon Employers Union liability for any payments the uninsured motorist, Carol E. Pecile, and uninsured owner, Kathryn Puglisi, would be legally responsible to make to plaintiffs. If the new statutory provisions are inapplicable, the Fund must bear this liability. It is undisputed that Employers Union has not complied with N.J.S.A. 17:28-1.1 and 1.2.
The mandate contained in N.J.S.A. 17:28-1.1 is that unless uninsured motorists' coverage is offered, "No automobile liability policy or renewal of such policy * * * shall be delivered or issued for delivery in this State * * *." Nowhere in the statute is there a requirement that this offer be made after a policy has either been issued or delivered. Rather, it is clear that the offer is a prerequisite to issuance or delivery. The court cannot read into a statute what the Legislature did not include. As a result, the issue in this case boils down to whether N.J.S.A. 17:28-1.1 and 1.2 apply to policies issued or delivered prior to the effective date of April 2, 1969.
Generally, a statute which changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of a contrary legislative intent. Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372 (1954). Here the Legislature employed the word *489 "shall" in order to express its mandate. It is a cardinal rule that the word "shall" connotes prospective operation and cannot embrace events which have already occurred. Cassan v. Fern, 33 N.J. Super. 96 (Law Div. 1954).
The factors a court should consider, aside from the actual wording, in order to determine whether a statute should be retrospective are: (1) the previous state of the law, (2) the circumstances leading to the enactment of the statute, and (3) the evils the statute seeks to remedy. Chambers v. Toohey, 14 N.J. Misc. 780 (Sup. Ct. 1936).
Here, the previous state of the law was that insurance companies were not permitted to offer uninsured motorists' coverage. The circumstances leading up to the enactment of the two statutes in question is that the Unsatisfied Claim and Judgment Fund was bearing the burden of providing protection to those who were injured by uninsured motorists. According to Exum v. Marrow, 112 N.J. Super. 570, 574 (Law Div. 1970), the evil remedied by the statutory change was the "financial burden relating to claims against uninsured motorists" that was being borne by the Fund.
The court in the above case explained that the plain intendment of the amendment to N.J.S.A. 17:28-1 was to relieve the Fund of some of these financial burdens. There does not appear to be any overriding public policy in favor of policyholders in general. The Legislature did not declare that all automobile liability policies must now contain uninsured motorists' coverage. On the contrary, it provided in N.J.S.A. 17:28-1.2 for the right of policy owners to reject such coverage.
Consequently, retrospective application is not necessary to fulfill the legislative intent. On the other hand, retrospective application would unjustifiably impose obligations and liabilities upon the insurance companies whose policyholders were or are now involved in accidents that have already occurred. If a company has provided such coverage, then it must make some payment, irrespective of whether the policyholder or the uninsured motorist was at fault. *490 However, if a company believes that it is not responsible for such coverage, it will then investigate to determine whether its policyholder was at fault. See Darrow v. Hanover Tp., 58 N.J. 410 (1971).
In light of the applicable rules of statutory interpretation, this court must conclude that N.J.S.A. 17:28-1.1 and 1.2 not only literally bespeak futurity, but also fail to reveal any underlying intentions of retroactivity. See Terracciona v. Magee, 53 N.J. Super. 557, 568 (Cty. Ct. 1959). Therefore, these statutes should be accorded prospective effect only, and are held not to obtain to the policy of insurance issued by Employers Commercial Union to plaintiffs prior to April 2, 1969.
Furthermore, due to the fact that N.J.S.A. 17:28-1 is an enabling rather than a mandatory measure, the amendment effective April 2, 1969 does not effect either the validity or vitality of the rider annexed to said insurance policy that limits the family protection coverage in question to accidents occurring outside the State of New Jersey.
For the foregoing reasons this court is of the opinion that it is the obligation of the Unsatisfied Claim and Judgment Fund Board to afford plaintiffs uninsured motorists' protection should they be found entitled to such payment.