LOUIS PANZINO, PETITIONER-APPELLANT, v. CONTINENTAL CAN COMPANY, RESPONDENT-RESPONDENT.

Argued March 23, 1976—Decided September 29, 1976.

299

*Mr. Jerry M. Finn* argued the cause for appellant (*Messrs. Goldberger, Siegel* and *Finn,* attorneys).

*Mr. John W. Taylor* argued the cause for respondent.

The opinion of the court was delivered by

MOUNTAIN, J. Petitioner filed a claim for occupational hearing loss six years after retiring from his employment with respondent corporation. As the Workmen's Compensation Act was then written, this time span exceeded the permissible period within which such a claim was required to be filed. Two months before his claim was heard, however, a statutory amendment abrogated the time limitation. The issue before us is whether the amendment applies and thus saves petitioner's claim.

It was stipulated that petitioner, Louis Panzino, retired from respondent's employ on March 31, 1966; that during the period of his employment he had been exposed to loud noise and had suffered a 54% binaural loss. It was not until the late summer of 1972, more than six years after the em-

ployment terminated, that Panzino discovered that his hearing loss was work-related. He filed his claim September 14, 1972. At that time the relevant limitations statute, *N. J. S. A.* 34:15–34, provided that claims for compensable occupational disability must be filed within two years of the employee's last exposure during the course of employment, or within one year of discovery, whichever was longer; and that furthermore a claim would be "forever barred" unless presented within five years from the date of last exposure. An amendment to this statute,[1] effective July 3, 1974, eliminated all time limitation requirements except "that where a claimant knew the nature of the disability and its relation to the employment," the petition must be filed "within 2 years after the date on which the claimant first had such konwledge . . ." This claimant's petition was filed within a month of his discovery that his hearing impairment was work-related.

On September 12, 1974, the Judge of Compensation ruled that Panzino was entitled to prevail, holding that he came within the favor of the statutory amendment. An award was entered in the sum of $4,320. On appeal the Appellate Division reversed. 135 *N. J. Super.* 206 (1975). It held that the amendment should be given only prospective application and that to give it retrospective effect would be to impair respondent's vested right to impose the bar of the earlier time limitation. This Court granted certification. 68 *N. J.* 487 (1975).

We first consider whether or not the amendatory enactment was intended to have retrospective operation. The Sponsor's Statement attached to the bill as introduced in the Assembly read as follows:

Occupational diseases are often of such an insidious nature that they do not become evident until years after exposure to the cause thereof. This bill memorializes this fact by abrogating the burdensome and

---

[1]*L.* 1974, *c.* 65.

arbitrary time restrictions presently in effect within which a claim for compensation must be filed, and which in fact may easily lapse before even the symptoms of disease are evident. As here prescribed, a claim would be permitted within 2 years after the claimant had actual knowledge of the nature of the disability and its relation to the employment.

Of the various materials that may reveal legislative intent, one of the most instructive is a statement by the sponsor of the act.

[T]he expressions of the sponsor of the bill normally reveal a legislative intent more significant than that revealed by those of a more casual legislative adherent. In this context, the significant legislative intent may well be the actual intent of the former. [*Dickerson, The Interpretation and Application of Statutes* 73 (1975)]

In the course of deliberations on a bill, legislators look to its sponsor as well as to the representatives of the committee having charge of it, as one who is expected to be particularly well informed about its purpose, meaning, and intended effect. In recognition of this reality of legislative practice, courts give consideration to statements made by a bill's sponsor on grounds similar to those relied on to support the use of statements made by the committeeman in charge of the bill. [2A *Sutherland, Statutes and Statutory Construction* § 48.15, at 221–22 (4th ed. 1973)]

The sponsor's statement here rather clearly identifies the mischief sought to be corrected. Existing time restrictions upon initiating claims have been found to be "burdensome" and "arbitrary." Experience has revealed that by their very nature occupational diseases often do not become manifest until years after exposure. This Court's decision in *Kane v. Durotest Corp.,* 37 *N. J.* 552 (1962), identified the rigors of a statutory time limit. There the petitioner's decedent had contracted beryllium poisoning from which she ultimately died. She did not, however, become aware of the existence of the disease until seven and one-half years after leaving respondent's employ. Because this exceeded the five-year term within which such a claim was required to be filed, her suit was barred. The result seemed then, and seems now, to have been unjust. There we said,

If the five-year limitation for prosecution of the compensation action occasionally operates harshly and lengthening of the period is considered desirable, the appeal for such change must be to the Legislature. [37 *N. J.* at 556]

The relief afforded by the new amendment can be seen as a legislative response to such an appeal, signifying an intent that claims for occupational disease shall be honored if filed within two years of discovery.

 Further, it has long been axiomatic that the Workmen's Compensation Act is to be liberally construed. *Torres v. Trenton Times Newspaper,* 64 *N. J.* 458, 461 (1974); *Petrozzino v. Monroe Calculating Machine Co., Inc.,* 47 *N. J.* 577, 580 (1966); *Close v. Kordulak Bros.,* 44 *N. J.* 589, 604 (1965). Bearing this in mind, being aware of the mischief sought to be remedied and always conscious of the beneficent purposes of this important social legislation, we perceive no reason why the Legislature would have wished to place any greater limitation upon the reach of the statute than can sensibly be drawn from its language. Accordingly we conclude that the enactment should be read to cover any claimant who files a petition within two years of the date on which he learns the nature of his disability and its relation to his employment.

Of course, to read the statute in this way sanctions petitioner's claim, unless, as so read, the enactment is unconstitutional. The claim was filed within a month of Panzino's discovery that his affliction — of which he had long been conscious — was work-related. Respondent argues that our giving the amendment this interpretation results in an unconstitutional deprivation of its "vested right" to take advantage of the statutory time limits in effect when the claim was filed. According to this argument, for which respondent finds support in this Court's decision in *State v. Standard Oil Co.,* 5 *N. J.* 281 (1950), aff'd *sub nom. Standard Oil Co. v. State of New Jersey,* 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951), respondent could not constitutionally be deprived of the right to assert the

bar of the time limitations set forth in the statute in effect when petitioner filed his claim. The filing in fact took place on September 14, 1972, by which date the applicable period had already expired. Stated somewhat differently, under this rationale respondent's defense may be characterized as the assertion of a vested right which could not be lost either by legislative or judicial intervention without impairing due process guarantees. Therefore, respondent contends, the fact that the statute was amended after the claim was filed, but before hearing, could have no effect upon its vested right to plead the statute; the passage of time had extinguished the remedy and petitioner's right of action died with it.

A constitutional challenge to state legislation on the ground that it impairs or destroys a vested right generally implicates the due process clause of the Fourteenth Amendment. *Rothman v. Rothman*, 65 *N. J.* 219, 225 (1974). The Supreme Court of the United States considered such a challenge in *Chase Securities Corporation v. Donaldson*, 325 *U. S.* 304, 65 *S. Ct.* 1137, 89 *L. Ed.* 1628 (1945). There a statute of the State of Minnesota had the effect of lifting the bar of the statute of limitations in a pending litigation. Appellant contended that to permit the new enactment to affect its rights would amount to taking its property without due process of law. In an opinion written by Justice Jackson the Court disagreed. It confirmed its earlier holding in *Campbell v. Holt*, 115 *U. S.* 620, 6 *S. Ct.* 209, 29 *L. Ed.* 483 (1885) and stated,

[C]ertainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is per se an offense against the Fourteenth Amendment. [325 *U. S.* at 316, 65 *S. Ct.* at 1143, 89 *L. Ed.* at 1636]

In *State v. Standard Oil Co., supra,* an escheat case, this Court considered the effect of the running of the statute of limitations upon a contractual obligation — a chose in action. We there said that at the expiration of the statu-

tory period, not only did the remedy expire but also the right was extinguished. Acknowledging that in view of the Supreme Court's decisions in *Chase Securities Corporation v. Donaldson* and *Campbell v. Holt,* both *supra,* there was no violation of the Fourteenth Amendment, our opinion nevertheless went on to say that

[t]he principle is embedded in our jurisprudence that where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment. [5 *N. J.* at 293]

We do not choose to accord this statement the comprehensive amplitude suggested by respondent. Rather we think it should be confined to the particular issue before the Court in that case, i. e., the effect of lapse of time upon a claim sounding in contract. The plaintiff's claim in the case before us does not spring from contract; it is a right born of statute. See *N. J. S. A.* 34:15–30. We are satisfied that the Legislature, by virtue of the 1974 amendment, has simply enlarged the availability of this statutory right to compensation for occupational disease by removing the five-year limitation period.

Because Panzino's claim is so evidently grounded in the statute, it cannot be characterized as deriving from the contract of employment. The notion that rights such as this are contractual has hitherto been considered and emphatically rejected.

The hollowness of the ring of "contract" becomes obvious when we tap it against the fact that the Compensation Act became binding upon employers and employees whose employment contracts antedated adoption of the act, * * * and, at least until an injury, the parties are bound by even radical and substantive changes in the act made after the entry into the employment contract.
* * * * * * * *
The analogy to contract is often a handy aid for the analysis of a specific problem, just as a paper tube may sometimes be an aid to hearing, but "contract" no more accurately describes the rights and duties of an employer and employee under the Workmen's Compensation Act than a paper tube corrects deafness. [*McAllister v. Board*

*of Ed. of Kearny,* 79 *N. J. Super.* 249, 260 (App. Div. 1963), aff'd, 42 *N. J.* 56 (1964)]

The position we take today is strengthened by recalling the manner in which our courts have treated time requirements set forth in the Workmen's Compensation Act. They have not been considered as ordinary statutes of limitation, but rather as jurisdictional prerequisites to agency action. In order to invoke the jurisdiction of the Workmen's Compensation Division, it has been as necessary to show that the petition was filed within the statutory time span as to show that the injury arose out of and in the course of employment. *Schwarz v. Federal Shipbuilding and Dry Dock Co.,* 16 *N. J.* 243, 248 (1954).

[T]he filing of the claim within a year is a jurisdictional fact, and not what the complainant calls a statute of limitations, the pleading of which might or might not be enjoined in a court of equity. [*Miller v. Beller Electric Supply Co.,* 100 *N. J. Eq.* 444, 445 (Ch. 1927)]

See also *Davis v. State,* 44 *N. J. Super.* 435, 441–42 (App. Div. 1957); *Riccioni v. American Cyanamid Co.,* 26 *N. J. Super.* 1, 5 (App. Div.), certif. den. 13 *N. J.* 289 (1953); *Valentine v. Walter Kidde & Co.,* 136 *N. J. L.* 292, 293 (Sup. Ct. 1947).

█ Respondent's defense, then, was not a bar made available by a statute of limitations, but rather the Compensation Court's lack of jurisdiction. Thus it can logically be said that the 1974 amendment does not revive an expired claim; instead it merely enlarges the agency's jurisdiction. What could not be successfully claimed at the time the suit was filed had become permissible at the time the case was heard and the defense of lack of jurisdiction no longer existed as a bar to the relief sought by petitioner.

It is, accordingly, our conclusion that the statutory amendment under consideration must be interpreted retroactively as described above, and that as so construed it must be sustained. The judgment of the Appellate Division is re-

versed and the judgment of the Division of Workmen's Compensation is reinstated.

SCHREIBER, J. (dissenting). Petitioner Louis Panzino was last exposed to respondent's noise hazard on March 31, 1966. His claim for workmen's compensation was "forever barred" five years later on March 31, 1971. *N. J. S. A.* 34:15–34.[1] Despite the bar, he filed a claim petition on September 24, 1972. Concededly if the matter had come on for hearing at that time, the petition would have been dismissed.

The statute, *N. J. S. A.* 34:15–34, was amended, effective July 3, 1974, to eliminate the five year limitation period.[2]

---

[1]Prior to July 3, 1974, *N. J. S. A.* 34:15–34 read in part as follows:

\* \* \* \* \* \* \* \*

Notwithstanding any provision of this section hereinabove set forth, all claims for compensation for compensable occupational disease hereunder shall be forever barred unless a petition is filed in duplicate with the secretary of the workmen's compensation bureau in Trenton, within five years after the date on which the employee ceased to be exposed in the course of employment with the employer to such occupational disease; *provided, however,* that in the event of death of an employee who has been paid compensation on account of a compensable occupational disease, a petition on behalf of dependents, as defined in section 34:15–13g of the Revised Statutes, shall be timely if filed within two years after the date of last payment to the employee notwithstanding such period of two years or any part thereof extends beyond the five-year period hereinabove set forth.

[2]On and after July 3, 1974, the amended act read:

Notwithstanding time limitation for the filing of claims for compensation as set forth in sections 34:15–41 and 34:15–51, or as set forth in any other section of this Title, there shall be no time limitation upon the filing of claims for compensation for compensable occupational disease, as hereinabove defined; provided, however, that where a claimant knew the nature of the disability and its relation to the employment, all claims for compensation for compensable occupational disease shall be barred unless a petition is filed in duplicate with the secretary of the division in Trenton within 2 years after the date on which the claimant first had such knowledge; provided further, that in case an agreement

Then petitioner moved his case and was awarded compensation. The Appellate Division reversed essentially for the reason that the respondent possessed a vested right because the five year bar had extinguished the petitioner's claim at the end of March 1971. 135 *N. J. Super.* 206, 209 (1975). I agree.

In *State v. Standard Oil Co.*, 5 *N. J.* 281 (1950), aff'd *sub nom. Standard Oil Co. v. New Jersey*, 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951), our Supreme Court enunciated:

\* \* \* The principle is embedded in our jurisprudence that where a right of action has become barred under existing law, the statutory defense constitutes a vested right which is proof against legislative impairment. [5 *N. J.* at 293].

\* \* \* \* \* \* \* \*

We conceive the New Jersey rule to be grounded in sound reason and principle. The statute of limitations is one of repose. As said by Mr. Justice Jackson in *Chase Securities Corporation v. Donaldson, supra*, such statutes "are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost." While it has been the generally accepted rule that a statute of this class operates on the remedy merely and does not extinguish the right, it would seem that the destruction of the remedy reduces the "right" to a mere moral obligation sufficient only in the law to sustain a new promise without an independent consideration. Our rule perceives no essential difference between the vesting of rights to real and tangible personal property under a statute of this class and its operation as a defense to contracts. The abrogation of the remedy is equally a violation of the right, for a right without a remedy is a mere shadow. [*Id.* at 295].

The majority seeks to confine the principle in the *Standard Oil* case to contract claims and asserts that the petitioner's

of compensation for compensable occupational disease has been made between such employer and such claimant, then an employee's claim for compensation shall be barred unless a petition for compensation is duly filed with such secretary within 2 years after the failure of the employer to make payment pursuant to the terms of such agreement; or in case a part of the compensation has been paid by such employer, then within 2 years after the last payment of compensation.

"claim in the case before us does not spring from contract; it is a right born of statute." (at 305). There are two difficulties in this position. First, the right to compensation benefits arises out of the employment contract. In *Cureton v. Joma Plumbing & Heating Co.*, 38 *N. J.* 326 (1962), Justice Proctor writing for a unanimous court stated:

> The workman's right to the compensation benefits which he has "earned" comes from his employment contract, whose terms include the provisions of the Workmen's Compensation Act. *New Amsterdam Casualty Co. v. Popovich*, 18 *N. J.* 218, 226 (1955).
>
> [38 *N. J.* at 331].

In *Heldrich v. American Incubator Mfg. Co.*, 104 *N. J. L.* 492 (1928), the Supreme Court wrote:

> * * * The whole scheme of workmen's compensation rests upon a contractual basis whereby employer and employee voluntarily enter into a relationship carrying with it certain rights and certain obligations. These rights and obligations are necessarily agreed to, *in limine*, when the relationship of master and servant first arises. [104 *N. J. L.* at 495].

The statutory compensation provisions for personal injuries are only applicable when the employer and employee agree to accept the statutory provisions in the employment agreement. *N. J. S. A.* 34:15–7.[3] In the absence of such an agreement, the employer's responsibility, if any, is based on negligence. *N. J. S. A.* 34:15–1.

---

[3] *N. J. S. A.* 34:15–7 reads:

When employer and employee shall by agreement, either express or implied, as hereinafter provided, accept the provisions of this article compensation for personal injuries to, or for the death of, such employee by accident arising out of and in the course of his employment shall be made by the employer without regard to the negligence of the employer, according to the schedule contained in sections 34:15–12 and 34:15–13 of this title in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury, and the burden of the proof of such fact shall be upon the employer.

Second, in the tort field, passage of the time fixed in the statute of limitations bars the cause of action and vests the defendant's privilege of non-liability. *Burns v. Bethlehem Steel Co.*, 20 *N. J.* 37 (1955). The Workmen's Compensation Act has replaced one remedy for personal injuries for another. To eliminate the general principle of vesting upon expiration of the statutorily fixed period because the cause of action is embodied in a statute instead of in the common law is to pay homage to form.

The rationale that the limitation in the Workmen's Compensation Act is jurisdictional and therefore does not have the same effect as a statute of limitations is a distinction without a difference. In both, the cause of action is barred because of the passage of a legislatively determined time period. Jurisdictional and statute of limitation concepts are not mutually exclusive. Both may result in vesting. However, the vesting effect due to lack of jurisdiction is absolute for the absence of jurisdiction may not be waived. *De Asio v. Bayonne*, 62 *N. J. Super.* 232, 236 (App. Div.), certif. den. 33 *N. J.* 386 (1960); *Riccioni v. American Cyanamid Co.*, 26 *N. J. Super.* 1, 5 (App. Div.), certif. den. 13 *N. J.* 289 (1953). Since vesting due to the statute of limitations may be waived by the party to be charged, it would appear that casting the issue in terms of jurisdiction leads to a more constant vesting effect.

The policies which support the New Jersey rule of vesting are equally applicable to workmen's compensation proceedings. Three primary reasons support the rule. First, there is the evidentiary purpose, namely, to prevent determinations of factual issues long after the event when memories have faded, witnesses have died or disappeared, and documents lost. Second is personal certainty — to assure a potential defendant he will not be subject to liability after a specified period of time. This is particularly pertinent in the workmen's compensation field where the insurance premium rates are adjusted on the basis of experience. *N. J. S. A.* 34:15–

89. Third, there is the equitable policy to discourage claimants from sleeping on their rights.

Other jurisdictions which have considered the problem of retroactivity have recognized the vested interest of the employer. In *Overmiller v. D. E. Horn & Co.*, 191 *Pa. Super.* 562, 159 *A.* 2d 245 (1960), the court held that a statute extending the time for rehearing from one year to eighteen months, which became effective more than one year after the original hearing, did not extend the jurisdiction of the Board to include the claimant's petition for a rehearing.

In *Pendzich v. Industrial Comm'n*, 11 *Wis.* 2d 531, 105 *N. W.* 2d 781 (1960), an employee filed a claim for occupational deafness six years and six months after an injury. The court held that the six-year statute of limitations barred him from compensation. An intervening statute, requiring all cases of occupational deafness to delay application until after they had been removed from the noise of employment for six months, did not apply to the plaintiff because the statute was not yet in effect during the six-month period following the claimant's last day of work.

In the leading treatise in the field, 3 *Larson's Workmen's Compensation Law*, § 78.80 (1976), there appears the following comment:

Finally, it may be noted that statutory amendments changing limitations periods are generally not applied retroactively, whether the effect of the change would be to improve or worsen the claimant's position. [*Id.* at 15–209; footnotes omitted].

Alternatively, if the vesting contention be rejected, retroactivity does not automatically follow. It is well settled that a statute will not be given retroactive effect unless its terms are "so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the legislature cannot otherwise be satisfied." *Kopczynski v. County of Camden*, 2 *N. J.* 419, 424 (1949). The source of this particular expression is *United States v. Heth*, 7 *U. S.* (3

Cranch) 399, 2 *L. Ed.* 479 (1806) where Justice Paterson went on to note that:

\* \* \* This rule ought especially to be adhered to, when such a construction will alter the pre-existing situation of parties, or will affect or interfere with their antecedent rights, services, and remuneration; which is so obviously improper, that nothing ought to uphold and vindicate the interpretation, but the unequivocal and inflexible import of the terms, and the manifest intention of the legislature. [7 *U. S.* at 412–413; 2 *L. Ed.* at 483–484].

The language in the Sponsor's Statement to Assembly Bill 1236, which was enacted as the amendment to *N. J. S. A.* 34:15–34, does not contain the clear, strong and imperative language that would admit only of retroactive application. *Rothman v. Rothman,* 65 *N. J.* 219, 224 (1974). The Statement reads:

Occupational diseases are often of such an insideous [sic] nature that they do not become evident until years after exposure to the cause thereof. This bill memorializes this fact by abrogating the burdensome and arbitrary time restrictions presently in effect within which a claim for compensation must be filed, and which in fact may easily lapse before even the symptoms of disease are evident. As here prescribed, a claim would be permitted within 2 years after the claimant had actual knowledge of the nature of the disability and its relation to the employment.

The reference to the fact that "[A] claim would be permitted within 2 years after the claimant had knowledge" expresses a relation between time of discovery and time of filing without relating either event to the date of passage of the amendment.

Further the amendment itself does not contain language which clearly expresses a legislative intent of retroactivity. In pertinent part the amendment reads:

\* \* \* there shall be no time limitation \* \* \* provided \* \* \* that where a claimant knew the nature of the disability \* \* \*, all claims *shall be* barred unless a petition is filed \* \* \* within 2 years after the date on which the claimant first had such knowledge \* \* \*. [*N. J. S. A.* 34:15–34, as amended by *L.* 1974, *c.* 65, § 1; emphasis supplied].

The words "shall be" express a future connotation — what must happen from now on. *See Cassan v. Fern,* 33 *N. J. Super.* 96, 100 (Law Div. 1954); *Hannan v. Employers Commercial Union Ins. Co.,* 117 *N. J. Super.* 485, 488–489 (Law Div. 1971); *Terracciona v. Magee,* 53 *N. J. Super.* 557, 568 (Cty. Ct. 1959). Accordingly, the act may be interpreted to apply only to claims which arise on or after the effective date. Although use of the past tense with respect to the claimant's knowledge of disability may be consistent with a retroactive interpretation, the language in the amendment cannot reasonably be read to compel an understanding of retroactivity. Moreover, when the Legislature has intended retroactivity of Workmen's Compensation Act amendments, it has expressly said so. *See N. J. S. A.* 34:15–95(d). Another example may be found in the 1936 amendment to *N. J. S. A.* 34:15–95 which provided for payments to employees whose total permanent disability was due in part to a non-compensable cause. The Legislature provided "[t]his act shall be retroactive as touching any accident occurring" since a previous date. *L.* 1936, *c.* 55, § 3. In the 1947 amendment concerning former military personnel who were receiving governmental subsistence payments while injured on the job, the act expressly applied to accidents occurring after July 1, 1946. *N. J. S. A.* 34:15–12.5.

The attempt to bolster the strained interpretation of the statute by reference to the well known axiom that the Workmen's Compensation Act is to be liberally construed is misplaced. That principle should not be used to extend the Workmen's Compensation Division's jurisdictional limits. Our courts have heretofore recognized this limitation. Justice Case in *Pierson v. National Fire Proofing Corp.,* 117 *N. J. L.* 600 (Sup. Ct. 1937) wrote:

Finally, it is argued that the Workmen's Compensation Act is a remedial statute and should be liberally construed. Our courts have so held * * *; but that does not mean that every question of sufficient doubt to warrant argument is to be resolved in favor of the

claimant even when his right to invoke the jurisdiction, that is to say, his status as a claimant, is the nub of the dispute. [117 *N. J. L.* at 603].

Justice Heher in *Nagy v. Ford Motor Co.*, 6 *N. J.* 341 (1951) wrote:

The Compensation Bureau is a creature of the statute. Its jurisdiction is special and limited, and where there is reasonable doubt of the existence of a particular power, the power is denied. * * * * * * The jurisdictional facts must be established, and compensation afforded in full compliance with the statute. [6 *N. J.* at 349].

Retroactively creating responsibility on the employer constitutes an enlargement of its primary statutory liability. This is effected in the absence of a clear legislative intent and conflicts with the unrefuted reasons which justify putting such claims to rest.

I would affirm the judgment of the Appellate Division.

*For reversal*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—6.

*For affirmance*—Justice SCHREIBER—1.