**John William ORR, Appellant,**

v.

**LEWIS CENTRAL SCHOOL DISTRICT, and Employers Mutual Casualty Company, Appellees.**

No. 64118.

Supreme Court of Iowa.

Nov. 12, 1980.

Oscar O. Over of Over, Over & Over, Council Bluffs, for appellant.

R. Ronald Pogge of Hopkins & Huebner, Des Moines, for appellees.

McCORMICK, Justice.

The question here is whether the "discovery rule" applies to the two–year period of limitations for original workers' compensation actions under section 85.26, The Code 1975. Claimant John William Orr filed a petition for arbitration in June 1978, seeking benefits for headaches which he alleged he suffered as the result of a work–connected incident in May 1975 when he was struck on the back of the neck by a falling plank. He averred that, despite reasonable diligence, he was unable to determine the headaches were caused by the May 1975 incident until September 1977. Defendant Lewis Central School District and its insurer, defendant Employers Mutual Casualty Company, moved to dismiss the petition on the ground that the action was barred because it was untimely under section 85.26. A deputy industrial commissioner sustained the motion and dismissed the petition. The industrial commissioner affirmed the deputy's ruling. Upon petition for judicial review, the district court affirmed. We reverse and remand to the industrial commissioner.

As explained in *Chrischilles v. Griswold*, 260 Iowa 453, 463, 150 N.W.2d 94, 100 (1967), the discovery rule delays the accrual of a cause of action until the injured person has in fact discovered his injury or by exercise of reasonable diligence should have discovered it. More specifically, a condition is implied in limitations provisions of most workers' compensation statutes that "[t]he time period for notice or claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease." 3 A. Larson Workmen's Compensation § 78.41 at 15–65 to 15–66 (1976). This rule is applicable to the notice of claim provision in section 85.23 of our workers' compensation statute. *Robinson v. Department of Transportation*, 296 N.W.2d 809, 812 (Iowa 1980).

No issue exists here regarding the sufficiency of claimant's petition to plead a basis for invoking the rule, if it is available under section 85.26. A motion to dismiss should only be sustained if it is certain that the party could not recover under any state of facts which could be proven in support of his claim. *Giltner v. Stark*, 252 N.W.2d 743, 744 (Iowa 1977). Whether the allegations could actually be proven at trial is a different issue. We are concerned here only with whether the discovery rule is available to a claimant under section 85.26.

I. At the time of the incident in the present case, section 85.26 provided in material part: "No original proceedings for compensation shall be maintained in any case unless such proceedings shall be commenced within two years from the date of the injury causing such death or disability for which benefits are claimed." *See* § 85.26, The Code 1975.

In *Otis v. Parrott*, 233 Iowa 1039, 8 N.W.2d 708 (1943), the court held that the injury referred to in section 85.26 is the injury which caused the disability or death rather than the disability or death itself. The court said:

It is reasonable to interpret the word "injury" to mean when "disability occurs" or "compensable injury" where that word stands alone in the statute. But it is not reasonable to so interpret it when the legislature has followed the word "injury" by the words "that caused the death or disability." By these latter words the legislature has designated the injury it means.

*Id.* at 1042–43, 8 N.W.2d at 711. *Otis* involved a lapse of time between the date of an accident and the date when tuberculosis was allegedly lighted up by it. The court held that the limitations period started on the date of the accident rather than the date the disease manifested itself.

Subsequently the court was confronted with an analogous problem under section 85.23. In *Jacques v. Farmers Lumber & Supply Co.*, 242 Iowa 548, 47 N.W.2d 236 (1951), the claimant suffered from incipient tuberculosis which was lighted up by his spray painting of truck bodies for his employer. He did not find out he had the disease until it was diagnosed by his physician approximately two months after he became ill. Notice of claim was given more than ninety days after the events which caused the lighting up of the disease but within ninety days after claimant learned he had it. In material part, section 85.23 provided that workers' compensation would not be allowed unless the employer had actual knowledge of the occurrence or notice be given to the employer "within ninety days after the occurrence of an injury." This court adopted and applied the discovery rule under section 85.23, holding that the ninety–day period in the statute did not begin until the employee found out he had the disease.

As a result of the *Otis* and *Jacques* decisions, an employee was excused from giving notice of a compensable injury until he found out about it, but if he did not bring an action on it within two years after the event which caused it, whether he knew about the injury or not, the claim was barred.

It is true section 85.23 starts the notice period with the "occurrence of an injury" whereas section 85.26 started its limitation period "from the date of the injury causing such death or disability for which benefits are claimed." However, to treat this difference in language as justifying a different construction of the statutes is to ignore the rationale in *Jacques*. The result in *Jacques* was based on the court's interpretation of the word "injury" which is used in both provisions. The court found the word encompassed non–occupational disease and the "lighting–up" of preexisting disease. It also found the injury within the meaning of section 85.23 "need not arise out of an accident or any special incident." *Id.* at 552, 47 N.W.2d at 239.

The court then reasoned:

So when we construe the phrase "occurrence of the injury" as the starting point for the ninety–day period in the notice statute we have one word "injury" which has been consistently . . . con-

strued to include disease or the lighting up of a preexisting disease when no time or place can be pointed to when and where the employee received the injury....

Since the legislature made disease compensable under its term "injury" then clearly it must have meant the "occurrence" of this type of "injury" was when the employee found out about the disease.... The employee could hardly be held under a duty to notify his employer of a disease of which he had no knowledge.

*Id.* at 552–53, 47 N.W.2d at 239. The court then approved statements of the discovery rule in cases from other jurisdictions to the effect that an "injury" does not occur within the meaning of workers' compensation statutes until the employee discovers its probable compensable character.

Nothing in section 85.26 precluded the court in *Otis* from giving the word injury the same interpretation. If "injury" did not occur until the employee discovered its probable compensable character, section 85.26 simply meant the limitations period started with the date of discovery of the probable compensable nature of the injury "causing ... death or disability for which benefits [were] claimed." Injury would thus have the same meaning and occur at the same time under each provision. It is neither reasonable nor necessary to say the legislature intended the word to have one meaning for notice purposes but an entirely different meaning for suit purposes.

In *Mousel v. Bituminous Material & Supply Co.*, 169 N.W.2d 763 (Iowa 1969), the court was asked to give the *Jacques* interpretation to section 85.26. This was after the court adopted the discovery rule for negligence cases in *Chrischilles*. The claimant in *Mousel* had received thermal burns in 1958, causing malignancies which were not diagnosed until 1966. After reviewing the holdings in *Otis, Jacques,* and *Chrischilles,* the court distinguished *Otis* from *Jacques* on the basis of the difference in language in sections 85.26 and 85.23. Without either adopting or rejecting the discovery rule, the court said: "We are not persuaded the commissioner and district court should be reversed under this record." *Id.* at 767. The court held the claimant had delayed unreasonably in seeking a diagnosis of his trouble, saying: "Certainly there is no room for a finding he exercised ordinary or reasonable care in this regard. A claimant should not be thus permitted to toll the running of the period of limitations for such an extended time." *Id.* Hence, instead of deciding whether the discovery rule should be applied under section 85.26, the court merely held the rule would not help the claimant in that case.

We affirmed the applicability of the discovery rule under section 85.23 as recently as our decision in *Robinson,* but we have not been required to reexamine the holding in *Otis* since the decision in *Mousel.*

In the meantime, two events of some significance have occurred. One event is that the discovery rule has been uniformly adopted by courts of other jurisdictions having workers' compensation statutes starting the claim period with the date of injury. In the few jurisdictions where the discovery rule has been rejected, the statutes expressly start the period with the date of accident rather than the date of injury. *See* A. Larson, *supra,* § 78.41 at 15–86 to 15–87 ("The number of jurisdictions that are still capable of destroying compensation rights for failure to file a claim at a time when its existence could not reasonably have been known has dwindled to three or four at most–all under statutes dating the period from time of accident rather than the time of injury."). The second significant event is that the legislature has removed the language from section 85.26 which this court relied on in *Otis* as precluding the interpretation of that section which was later given to section 85.23 in *Jacques.*

In 1977 the legislature passed an Act, according to its title, "to resolve differences in procedures involving provisions of the workers' compensation law and the Iowa administrative procedure Act." *See* 1977 Session, 67th G.A., ch. 51. The enactment struck section 85.26 and substituted a provision which included the following:

No original proceedings for benefits under this chapter, chapter eighty–five A (85A) or eighty–six (86) of the Code, shall be maintained in any contested case unless such proceedings shall be commenced within two years from the date of the occurrence of the injury for which benefits are claimed except as provided by section eighty–six point twenty (86.20) of the Code.

Thus, since July 1, 1977, the limitation period in section 85.26 starts with "the date of the occurrence of the injury." The same language is used to define the starting point in section 85.23. It was this language which was held in *Jacques* to include the discovery rule.

Because the change in section 85.26 was part of an enactment of a technical nature which was designed to clarify chapter 85, the legislature's action in bringing the language of section 85.26 into conformity with that of section 85.23 may have been taken to shed light on the meaning of which it intended the former statute to have. This does not by itself settle the issue whether the change in section 85.26 was merely intended to remove doubt concerning its meaning. We have said:

An amendment may indicate an intent either to change the meaning of a statute or to clarify it. . . . Whenever it appears legislation may have been passed simply for the purpose of removing doubt from previous acts, the courts should give effect to that purpose. . . .

The rule for ascertaining the purpose of the legislature is as follows:

Whether or not a subsequent statute sheds light upon the meaning of a former statute depends upon a number of circumstances. Where the original law was subject to very serious doubt, by permitting subsequent amendments to control the former meaning a great deal of uncertainty in the law is removed. And the legislature is probably in the best position to ascertain the most desirable construction. In addition it is just as probable that the legislature intended to clear up uncertain-

ties, as it did to change existing law where the former law is changed in only minor details. Thus it has been asserted that "one well recognized, indication of legislative intent to clarify, rather than change, existing law is doubt or ambiguity surrounding a statute." The New York court has established the following test: "The force which should be given to subsequent as affecting prior legislation, depends largely upon the circumstances under which it takes place. If it follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight . . . If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute." 2A Sutherland Statutory Construction § 49.11 at 265–266 (Fourth Ed. 1973).

*Barnett v. Durant Community School District*, 249 N.W.2d 626, 629 (Iowa 1977).

In the wake of *Jacques* and *Mousel*, the viability of the interpretation of section 85.-26 in *Otis* was in serious question. Until the present case, the court did not have an opportunity to resolve that question. The legislature has acted in the meantime. Its amendment to 85.26 occurred without any indication that a substantive change in the law was intended. The amendment was a minor detail in a technical enactment which had a clarifying purpose. It is obvious that the words deleted by the legislature from section 85.26 did not have the significance for the legislature that they did for this court in *Otis*. In view of the uncertainty in the law after *Jacques* and *Mousel*, the general trend toward adoption of the discovery rule under similar statutes, and the context in which the amendment occurred, we believe the legislature amended section 85.26 to clarify rather than change its meaning. Because the amendment removed the language which had been determinative in *Otis* and brought the provision into conformity

with section 85.23, we conclude that the legislature intended to remove the uncertainty following *Mousel* concerning whether the discovery rule was applicable under section 85.26 as well as under section 85.23. Accordingly, we overrule *Otis*. The limitation period under section 85.26, The Code 1975, began to run when the employee discovered or in the exercise of reasonable diligence should have discovered the nature, seriousness and probable compensable character of the "injury causing . . . death or disability for which benefits [were] claimed."

We hold that this discovery rule was available to claimant in the present case. The deputy commissioner, the commissioner and the district court erred in holding otherwise.

II. We believe the result is the same even if the amendment were viewed as changing the law. In that event we would have to determine whether the amended statute was intended to apply to all injuries discovered after the amendment's effective date or only those injuries caused by events occurring after that date. We put to one side any issue of retrospectivity. *Cf. Secrest v. Galloway Co.*, 239 Iowa 168, 30 N.W.2d 793 (1948) (holding that an amendment shortening the limitations period in section 1457, The Code 1939, was not retroactive).

In the present situation, claimant alleges he did not discover his injury until September 1977, several months after the amendment became effective. Because his action was commenced in June 1978, it was timely if the amended limitations period applied. However, because the accident occurred before the effective date of the amendment, his action would not be timely if the amendment only applies to events causing injury or disease after its adoption.

■ We must apply the workers' compensation statute broadly and liberally in furtherance of its humanitarian objective. *See Halstead v. Johnson's Texaco*, 264 N.W.2d 757, 759 (Iowa 1978). Courts do not favor statutes of limitations. When two interpretations of a limitations statute are

possible, the one giving the longer period to a litigant seeking relief is to be preferred and applied. *Sprung v. Rasmussen*, 180 N.W.2d 430, 433 (Iowa 1970).

■ Under the discovery rule, the period of limitations does not begin to run until the claimant knows of his injury and its probable compensable nature. *See Mousel*, 169 N.W.2d at 766–67. This is the rule which the 1977 amendment made applicable to the limitations period in section 85.26. Nothing in the statute purports to exclude from its reach injuries discovered after the amendment's effective date which were caused by events preceding the change.

Moreover, viewing section 85.26 as a "statute of creation" does not require the amendment to be held inapplicable. *See* § 4.2, The Code. The statute as amended expressly confers the right which claimant attempted to exercise.

The New Jersey Supreme Court held a similar amendment was applicable even to injuries discovered before its effective date in *Panzino v. Continental Can Co.*, 71 N.J. 298, 364 A.2d 1043 (1976). In doing so, the court reasoned:

> . . . [I]t has long been axiomatic that the Workmen's Compensation Act is to be liberally construed. . . . Bearing this in mind, being aware of the mischief sought to be remedied and always conscious of the beneficent purposes of this important social legislation, we perceive no reason why the Legislature would have wished to place any greater limitation upon the reach of the statute than can sensibly be drawn from its language. Accordingly we conclude that the enactment should be read to cover any claimant who files a petition within two years of the date on which he learns the nature of his disability and its relation to his employment.

*Id.* at 303, 364 A.2d at 1045. The court added that its holding was strengthened by the fact that the time limitation was in a statute of creation rather than in an ordinary statute of limitations. *Id.* at 306, 364 A.2d at 1047 ("Thus it can logically be said that the 1974 amendment does not revive

an expired claim; instead it merely enlarges the agency's jurisdiction.").

We hold that the discovery rule is available in the present case on this ground also. Of course, claimant must still meet his burden in the arbitration proceeding to prove a factual basis for application of the rule.

We reverse and remand to the industrial commissioner for further proceedings.

REVERSED AND REMANDED.

All justices concur except UHLENHOPP, J., who concurs in division II and the result but dissents from division I, HARRIS, J., who concurs in division I and the result, and LeGRAND, ALLBEE, and McGIVERIN, and SCHULTZ, JJ., dissent.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I concur in division II of the court's opinion and in the result. The questions remain, of course, as to whether claimant did not in fact discover the injury until September 1977 and, if he did not, whether he should have discovered it sooner in the exercise of reasonable diligence.

I do not agree with division I. I think the circumstances surrounding the amendment of section 85.26 are not sufficient to warrant our overruling *Otis v. Parrott*, 233 Iowa 1039, 8 N.W.2d 708 (1943). Besides, the following reasoning in *Otis* seems irrefutable:

> The only injury Otis received in the course of his employment was the injury of January 4, 1939, when the truck turned over near Cumberland, Maryland. The statute of Iowa states "within two years from the date of the injury causing such death or disability." The statutes in the other states stop at the word "injury." This afforded the courts of those states a basis for saying that "injury" meant "compensable injury." Our statute gives us no such opportunity. It is reasonable to interpret the word "injury" to mean when "disability occurs" or "compensable injury" where that word stands alone in the statute. But it is not reasonable to so interpret it when the

legislature has followed the word "injury" by the words "that caused the death or disability." By these latter words the legislature has designated the injury it means. It does not mean the compensable injury or the state of facts or conditions which first entitle the claimant to compensation. It is the causal injury without reference to whether it is compensable or not. With this description of the word "injury," we cannot arrive at a conclusion that the "resultant injury" was meant by the legislature. In all compensation cases there may be two injuries. The first injury, without which there can be no compensation case, is synonymous with accident. This may be serious or it may be trivial. It may result in immediate disability or death, or it may not result in disability or death for a long time. If this first injury or accident is trivial, then there may be a second injury which occurs when the disability arises. This is the resultant injury. It is caused by the first injury. If the legislature, by using the single word "injury," allows the courts to speculate on which injury was intended, the courts can, upon reason and authority, arrive at a conclusion that the second or resultant injury was meant. When, however, the legislature specifies that the causal injury will control, then the court is bound by the words of the statute. The language of this statute evidences an intention to set a definite limitation to the period within which proceedings may be commenced without reference to the exigencies which arise from a trivial injury that later causes a compensable injury. The statute relates not only to proceedings for compensation for death but also to proceedings for compensation for disability. In each instance it is the causal injury that is the starting date for the limitation period within which the proceedings may be maintained.

233 Iowa at 1042–43, 8 N.W.2d at 711.

LeGRAND, Justice (dissenting).

I dissent from both Division I and Division II of the majority opinion, and I would affirm the trial court.

I agree with Justice Uhlenhopp's dissent to Division I in which he points out the reasoning of *Otis v. Parrott*, 233 Iowa 1039, 8 N.W.2d 708 (1943), is "irrefutable."

However, I disagree, too, with Division II, which turns on the effect of a 1977 amendment to section 85.26, The Code. The purpose of that amendment was to make section 85.26 consistent with section 85.23 as far as limitation of actions is concerned by deleting language making the limitation statute run from the date of the event which caused the injury. The decisive question is whether that amendment shall have prospective or retrospective effect, although the majority skirts that issue.

The majority leans on section 4.2, The Code, for statutory support in construing this amendment. I think it should have looked, rather, to section 4.5 for guidance. That section directs that we give prospective application to statutes "unless [they are] expressly made retrospective." Under that rule, the 1977 amendment must be given prospective application only. Not only is this dictated by section 4:5, it is also the holding of *Secrest v. Galloway*, 239 Iowa 168, 176, 30 N.W.2d 793, 795–96 (1958). Furthermore it is the general rule, according to 100 C.J.S., *Workmen's Compensation*, § 436 (1958).

The majority opinion leads to a curious result. Orr was injured in May, 1975, and filed a petition for arbitration in June, 1978. The amendment which the majority says extended the time for filing his claim became effective July 1, 1977. Under the law as it existed prior to that date, both statutory and case, Orr's claim was barred in May, 1977, two years after the accident and two months before the amendment became law. *See also* 51 Am.Jur.2d, *Limitation of Actions*, section 15 (1970).

Thus the majority does not merely *extend* the time for filing; it *revives* an already extinct claim. I do not believe any rule of "liberal construction" can, or should, reach that far.

ALLBEE, McGIVERIN and SCHULTZ, JJ., join this dissent.