# IN THE SUPREME COURT OF IOWA

No. 14–2062

Filed December 18, 2015

**BRUCE BAKER,**

Appellee,

vs.

**BRIDGESTONE/FIRESTONE** and **OLD REPUBLIC INSURANCE,**

Appellants.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

An employer appeals the district court's ruling on judicial review of the workers' compensation commissioner, contending the employee's claim is time-barred because the discovery rule does not apply to work-related injuries arising out of a singular event. **AFFIRMED.**

Joseph M. Barron and William Timothy Wegman of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, West Des Moines, for appellants.

Martin Ozga of Neifert, Byrne & Ozga, P.C., West Des Moines, for appellee.

**HECHT, Justice.**

An employee of a tire manufacturer strained his back on the job. On the second anniversary of the incident, the manufacturer notified the employee that the limitations period had expired and no further medical services would be provided for treatment of the employee's injury. The employee filed a workers' compensation proceeding within thirty days after receiving the notice from his employer, but the workers' compensation commissioner concluded the statute of limitations barred the claim. We must decide in this case whether the commissioner committed legal error in concluding the discovery rule does not apply under the circumstances presented in this case. Because we conclude the discovery rule can apply under the circumstances presented here, we affirm the district court's judgment reversing the agency's decision.

## I. Background Facts and Proceedings.

Bruce Baker works for Bridgestone/Firestone[1] at its Des Moines plant. He has worked for the company since 1994. At the time of the arbitration hearing in this case, he was a maintenance mechanic in the hoist department. As a maintenance mechanic, Baker inspected and repaired machines located at the Bridgestone plant. This position often required him to work on scissor lifts suspended up to twenty-six feet off the ground. As a result, Baker frequently worked in awkward positions—including reaching, leaning, and bending over backwards—to reach the machines.

On May 23, 2010, Baker sustained a back injury while working at the plant. The accident occurred when he bent over to pick up a dropped tool and inadvertently stepped on a lanyard hooked to his chest. When

---

[1]For economy's sake, we refer to the company simply as Bridgestone.

Baker attempted to stand up, the lanyard stuck under his right foot and pulled him to the ground, causing him to roll over. He experienced pain in his lower back and immediately reported the incident to a supervisor as required by company policy. Baker resumed working after reporting the incident.

Dr. Troll, the plant physician, examined Baker on May 25. The doctor recommended stretching exercises and instructed Baker to use acetaminophen and ice for his discomfort. Dr. Troll's progress note for the May 25 examination recommended Baker "work at his own pace today." Although he experienced some pain immediately after the fall, Baker testified—and the commissioner found—that he did not foresee the incident having a lasting impact on his ability to perform the functions of his position.

Unfortunately, Baker's back pain did not subside, so he consulted another plant physician on July 30, as well as Dr. Troll again on September 2. Both doctors recommended Baker treat his pain with over-the-counter analgesics, ice, and light physical therapy. Baker's pain gradually increased, but he was able to continue performing his assigned job duties despite the discomfort. However, because he continued to experience pain, he consulted Dr. Troll four more times in December. At his December 2 appointment—just over six months following the accident—Dr. Troll ordered x-rays and an MRI of Baker's lumbosacral spine and prescribed Tramadol to address Baker's persistent pain. The MRI study revealed Baker had mild lumbar degenerative changes consistent with normal wear and tear. Although Baker reported ongoing low back pain, Dr. Troll's progress note for a December 16 exam reveals Baker was instructed to work at regular duty. Dr. Troll did not assign any lifting or other specific restrictions on Baker's exertion.

In January 2011, Dr. Troll referred Baker to Dr. Hansen, a pain management specialist. Dr. Hansen administered injections for Baker's pain and prescribed other medications, including Hydrocodone, Tizanidine, and Tramadol. Baker testified that by the time he began seeing Dr. Hansen, he had realized his back injury would affect his job performance and his life in general. On April 1, Baker underwent a radiofrequency denervation procedure, causing him to miss work for the first time since the incident on May 23, 2010. Bridgestone paid for this medical treatment provided by Dr. Hansen but did not pay Baker wages or compensation benefits for the five days of missed work. In July 2011, Dr. Troll again advised Baker to "work at his own pace." Dr. Hansen provided treatment for Baker through May 2012.

On May 23, 2012, Bridgestone notified Baker that it would no longer pay for his medical care, as it believed the two-year statute of limitations for workers' compensation benefits had expired. At that time, Baker sought treatment from his family doctor, Dr. Davis, to continue his pain management. Baker paid for this and subsequent medical treatment through his own health insurance plan.

On June 20, 2012, Baker filed two petitions with the Iowa Workers' Compensation Commission seeking benefits for his back injury. One petition alleged an injury date of May 23, 2010; the other petition alleged a cumulative injury arising on June 19, 2012. The commission consolidated the petitions for hearing.

After a hearing, a deputy commissioner issued an arbitration decision ruling that Baker did not sustain a cumulative injury on June 19, 2012, and that the two-year statute of limitations in Iowa Code section 85.26 (2009) barred Baker's claim. The deputy commissioner found Baker knew or should have known his condition was serious

before June 20, 2010 because (1) he reported the injury; (2) he sought medical treatment by visiting Dr. Troll on May 25; (3) Dr. Troll imposed "work restrictions" by instructing Baker to work at his own pace; (4) Baker underwent some physical therapy; and (5) Baker testified his symptoms never went away after May 23, 2010. However, the deputy also found "no quarrel" with Baker's testimony that he did not anticipate permanent adverse impact on his employment until after June 20, 2010. Ultimately, the deputy concluded these facts actually did not matter because the discovery rule only applied to cumulative injuries and Baker did not prove a cumulative injury.

Baker filed an intra-agency appeal. The commissioner's appeal decision also determined Baker's claim was time-barred and concluded the discovery rule is categorically inapplicable to workers' compensation claims arising out of a singular event. The commissioner's appeal decision "affirm[ed] and adopt[ed]" the deputy's arbitration decision *except* for new analysis "on the issue of the discovery rule in traumatic injury claims." The commissioner's appeal decision acknowledged that "traumatic injuries commonly fail to be instantly disabling or otherwise have an immediate significant impact on employment," but nonetheless affirmed the deputy's reliance on *Clark v. City of Spencer*, Iowa Workers' Comp. Comm'n No. 5017329, 2007 WL 2707714, as agency precedent precluding application of the discovery rule in this case.

Baker filed a petition for judicial review in the district court.[2] The district court reversed the commissioner's ruling, concluded the discovery rule can apply to injury claims arising from singular events,

---

[2]Baker's petition for judicial review did not challenge the agency's determination that the injury in this case was not a cumulative injury.

and remanded to the agency for a determination whether the discovery rule extended Baker's time to file to at least June 20, 2012. Bridgestone appealed, and we retained the appeal.

## II. Scope of Review.

The issue we must resolve is whether the discovery rule can be applied in determining when the period of limitation commences for workers' compensation claims arising out of a singular event. "Iowa Code chapter 17A governs judicial review of the decisions of the workers' compensation commissioner." *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004). Under Iowa Code section 17A.19 "we are free to substitute our own interpretation of statutes 'whose interpretation[s] ha[ve] not clearly been vested' in the agency." *Roberts Dairy v. Billick*, 861 N.W.2d 814, 817 (Iowa 2015) (quoting Iowa Code § 17A.19(10)(*c*)).

The legislature has not expressly granted the commissioner authority to interpret section 85.26, which prescribes periods of limitation for workers' compensation cases. *See* Iowa Code § 85.26. Normally, in the absence of an express grant of interpretive authority, we must determine whether the legislature has nonetheless "clearly vested the agency with authority to interpret the statutes at issue." *Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 253 (Iowa 2010). But the discovery rule question here does not really involve the agency's interpretation of the statute; instead, the question is whether the agency *correctly applied* the "judicial interpretation that the date of injury referred to in the statute is the time when the employee discovers the injury and its probable compensable nature." *Bergen v. Iowa Veterans Home*, 577 N.W.2d 629, 630 (Iowa 1998). Therefore, our review is for errors at law. *See Vachon v. State*, 514 N.W.2d 442, 443 (Iowa 1994)

(applying the errors-at-law standard in determining whether the district court correctly applied the discovery rule in a tort action).

### III. Analysis.

As we have already noted, the agency's ruling in this case relied on its own prior decision in *Clark* in concluding the discovery rule does not apply in workers' compensation cases arising from singular traumatic events. Of course, the agency's interpretation of law does not bind the court. *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 332 (Iowa 2005) (per curiam). For reasons explained below, the agency's decision in *Clark* is factually and legally inapposite here.

Section 85.26(1) contains two limitation periods for workers' compensation cases. A two-year period applies unless "weekly compensation benefits are paid under section 86.13." Iowa Code § 85.26(1). If—as in *Clark*—the employer has paid weekly compensation benefits on a claim, the claimant must file "within three years from the date of the last payment of weekly compensation benefits." *Id.* In such cases, the limitation period is not measured from the occurrence of the injury. *Bergen*, 577 N.W.2d at 630. Because no compensation benefits were paid to Baker, the commissioner erred in concluding the *Clark* case—which involved a different limitations period measured from a different starting point—controlled the agency's decision in this case. We now turn to the question whether the commissioner also erred in concluding the discovery rule does not apply in workers' compensation cases arising from a singular incident.

**A. Purpose and Character of Workers' Compensation.** Iowa first enacted a workers' compensation system in 1913. 1913 Iowa Acts ch. 147; *Hansen v. State*, 249 Iowa 1147, 1150, 91 N.W.2d 555, 556 (1958) (recognizing the 1913 enactment was "[t]he original work[ers']

compensation act" in Iowa). "By 1920 all but eight states had adopted compensation acts," and by the mid-1960s, all fifty had. 1 Arthur Larson et al., *Larson's Workers' Compensation Law* § 2.08, at 2-15 (rev. ed. 2015) [hereinafter Larson]. "The purpose, intent, and scheme of work[ers'] compensation legislation is well understood . . . ." *Flint v. City of Eldon*, 191 Iowa 845, 847, 183 N.W. 344, 345 (1921). A fundamental principle undergirding workers' compensation law is the proposition

> that the disability of a work[er] resulting from an injury arising out of and in the course of his [or her] employment is a loss that should be borne by the industry itself . . . and not suffered alone by the work[er] or the employer, depending on individual fault or negligence.

*Tunnicliff v. Bettendorf*, 204 Iowa 168, 171, 214 N.W. 516, 517–18 (1927). To accomplish their purpose, workers' compensation systems impose a series of tradeoffs. *See Ganske v. Spahn & Rose Lumber Co.*, 580 N.W.2d 812, 814 (Iowa 1998) (discussing "the quid pro quo rationale underlying" workers' compensation); *see also Henry v. State Comp. Ins. Fund*, 982 P.2d 456, 458 (Mont. 1999) (noting workers' compensation systems are "premised on a compromise").

In the grand bargain removing workers' compensation matters from the civil justice system, employers receive immunity from potentially large tort lawsuits and jury verdicts on the condition that they pay compensation benefits for injuries arising out of and in the course of employment without regard to fault. *See* 1913 Iowa Acts ch. 147, § 1(a) (relieving employers "from other liability for recovery of damages or other compensation for . . . personal injury"); *see also McGarrah v. State Accident Ins. Fund Corp.*, 675 P.2d 159, 168 (Or. 1983) ("[E]mployers, regardless of fault, [must] compensate employe[e]s for injuries arising out of and in the course of employment.").

The workers' compensation bargain also requires claimants to relinquish rights they would otherwise maintain against their employers. Claimants cede the prospect of pressing tort lawsuits in exchange for a system designed to provide compensation benefits and medical services promptly, without protracted and expensive litigation. *See Flint*, 191 Iowa at 847, 183 N.W. at 345; *see also Grinnell Coll. v. Osborn*, 751 N.W.2d 396, 400 (Iowa 2008) ("The process sought to establish an administrative tribunal that would provide for the prompt and efficient determination and award of compensation to injured workers."); *Morrison v. Century Eng'g*, 434 N.W.2d 874, 877 (Iowa 1989) ("The system is designed to be essentially nonadversarial. . . . [It] presupposes that all workers will benefit more if claims are processed routinely and paid quickly."); *Conrad v. Midwest Coal Co.*, 231 Iowa 53, 64, 300 N.W. 721, 727 (1941) (noting the workers' compensation system "was adopted by our legislature as a means of avoiding lengthy litigation that might grow out of industrial accidents").

> Larson explains the essence and mutual benefit of these tradeoffs:
>
> [N]egligence and fault are largely immaterial, both in the sense that the employee's contributory negligence does not lessen his or her rights and in the sense that the employer's complete freedom from fault does not lessen its liability . . . [.] [T]he employee and his or her dependents, in exchange for [some] modest but assured benefits, give up their common-law right to sue the employer for damages for any injury covered by the act[.]

1 Larson § 1.01, at 1-2 to -3; *accord Harned v. Farmland Foods, Inc.*, 331 N.W.2d 98, 100 (Iowa 1983) ("The legislature has plainly tried . . . to protect employers from facing tort suits brought by injured employees. It should certainly not be necessary to repeat here that this protection is in exchange for advantages to employees . . . ."); *Mitchell v. Phillips Mining Co.*, 181 Iowa 600, 607, 165 N.W. 108, 110 (1917) (acknowledging the

purpose of workers' compensation was to allow employers to "escape the evils of personal injury litigation" yet provide employees with "reasonable compensation for injuries received in their employment"); *Henry*, 982 P.2d at 458 ("[W]orkers g[i]ve up their right to sue employers in tort for work-related injuries in exchange for a guaranteed compensation system."); *Meadows v. Lewis*, 307 S.E.2d 625, 638 (W. Va. 1983) ("The benefits of this system accrue both to the employer, who is relieved from common-law tort liability . . . , and to the employee, who is assured prompt payment of benefits."). "[U]nlike tort, the right to benefits and [the] amount of benefits are based largely on a social theory of providing support and preventing destitution, rather than settling accounts between two individuals according to their personal deserts or blame." 1 Larson § 1.02, at 1-3.

The workers' compensation system establishes a relationship between injured employees and their employers that is notably different from the relationship between plaintiffs and defendants litigating at arm's length in personal injury cases. *See Morrison*, 434 N.W.2d at 877 (noting the workers' compensation system is intended to be nonadversarial); *cf. Meadows*, 307 S.E.2d at 638 ("[C]haracterization of workers' compensation proceedings as 'adversarial' is not consistent with the purpose of the . . . Act."). One stark illustration of the difference is employers' obligation to promptly furnish reasonable medical services for the care of their employees' work-related injuries. Iowa Code § 85.27(1), (4). Employers promptly furnishing such medical services for their injured workers are entitled to choose the physician who will perform the services. *Id.* § 85.27(4). In promptly furnishing reasonable medical care to injured employees under chapter 85, employers are empowered to substitute their judgment for that of their injured employees on the

important question of which medical professionals are best suited to diagnose and treat work-related injuries.[3]  Tortfeasors have no corollary control over the selection of their victims' medical providers.

The unique relationship between employers and their injured workers in our workers' compensation system is further evidenced by the employer's obligation to pay compensation benefits in the correct amount promptly when they are owed to injured employees.  A statutory provision promotes voluntary compliance with this obligation by authorizing an award of additional benefits "up to fifty percent of the amount of benefits that were denied, delayed, or terminated without reasonable or probable cause or excuse."  *Id.* § 86.13(4)(*a*).  In furtherance of prompt payment of compensation benefits, the statute requires employers to reasonably investigate claims.  *Id.* § 86.13(4)(*c*)(1).  These statutory provisions justify injured employees' corollary expectation that compensation benefits for temporary or permanent disability will be paid to them when they are owed without litigation and delay.

The unique relationship between employers and their injured employees under the grand bargain of workers' compensation also animates a rule of statutory interpretation deeply embedded throughout our caselaw.  We liberally construe workers' compensation statutes in

---

[3]Of course, employers' authority to choose the medical providers who will diagnose and treat injured workers is not boundless.  If an employee believes the medical care provided by the employer is not offered promptly or is not reasonably suited to treat an injury, the employee may file a petition for alternate care.  Iowa Code § 85.27(4).

claimants' favor to effectuate the statute's humanitarian and beneficent purpose.[4]

The ultimate takeaway is this: "[T]ort litigation is an adversary contest to right a wrong between the contestants; workers' compensation is a system, not a contest, to supply security to injured workers . . . ." 1 Larson § 1.03[7], at 1-13. This characterization is just as true today as it was when Iowa first established its workers' compensation system. *See P.D.S.I. v. Peterson*, 685 N.W.2d 627, 635 (Iowa 2004) (concluding a fault-based interpretation of statutes "has no place in workers' compensation law"); *cf. Marovec v. PMX Indus.*, 693 N.W.2d 779, 787 (Iowa 2005) (concluding language from *Flint* describing the purpose of workers' compensation is just as true now as it was then). With this understanding of the obligations and expectations of the parties in workers' compensation cases, we now turn to section 85.26, our caselaw, and the particular circumstances of this case.

**B. Iowa Law Through 1980.** "Prior to the . . . Fortieth General Assembly (extra session), there was no statute of limitations applicable to claims arising under the Work[ers'] Compensation Law." *Hinrichs v. Davenport Locomotive Works*, 203 Iowa 1395, 1398, 214 N.W. 585, 586 (1927); *see* H.F. 42, § 23-a1, 40th Ex. G.A. (Iowa 1924). But beginning with the 1924 Iowa Code, the statute required workers' compensation

---

[4]The cases in which we have acknowledged this principle are numerous and we will therefore not provide an exhaustive list. However, we have applied it repeatedly, beginning shortly after the legislature enacted Iowa's first workers' compensation system. *See, e.g.*, *Denison Mun. Utils. v. Iowa Workers' Comp. Comm'r*, 857 N.W.2d 230, 234–35 (Iowa 2014); *Dillinger v. City of Sioux City*, 368 N.W.2d 176, 180 (Iowa 1985); *Usgaard v. Silver Crest Golf Club*, 256 Iowa 453, 459, 127 N.W.2d 636, 639 (1964); *Heiliger v. City of Sheldon*, 236 Iowa 146, 152, 18 N.W.2d 182, 186 (1945); *Walker v. Speeder Mach. Corp.*, 213 Iowa 1134, 1143, 240 N.W. 725, 729 (1932); *Bidwell Coal Co. v. Davidson*, 187 Iowa 809, 818, 174 N.W. 592, 595 (1919).

claimants to commence proceedings within "two years from the date of the injury causing . . . death or disability." Iowa Code § 1386 (1924).

Our first major case examining the interplay between the workers' compensation statute of limitations and a singular traumatic event was *Otis v. Parrott*, 233 Iowa 1039, 8 N.W.2d 708 (1943). In January 1939, a truck driver sustained several injuries in a highway accident. *Id.* at 1040, 8 N.W.2d at 710. Two months later, he developed tuberculosis. *Id.* at 1041, 8 N.W.2d at 710. After tuberculosis took the truck driver's life, his surviving spouse filed a workers' compensation action in February 1941, more than two years after the highway accident but less than two years after the tuberculosis became apparent. *See id.*

We held the action was not timely. *See id.* Our decision in *Otis* focused on the language in the statute at the time requiring proceedings to begin within two years of "the injury causing . . . death or disability for which compensation is claimed":

> [T]he legislature has designated the injury it means. It does not mean the compensable injury or the state of facts or conditions which first entitle the claimant to compensation. It is the causal injury without reference to whether it is compensable or not. With this description of the word "injury," we cannot arrive at a conclusion that the "resultant injury" was meant by the legislature. In all compensation cases there may be two injuries. The first injury, without which there can be no compensation case, is synonymous with accident. This may be serious or it may be trivial. It may result in immediate disability or death, or it may not result in disability or death for a long time. If this first injury or accident is trivial, then there may be a second injury which occurs when the disability arises. This is the resultant injury. It is caused by the first injury. If the legislature, by using the single word "injury", allows the courts to speculate on which injury was intended, the courts can upon reason and authority arrive at a conclusion that the second or resultant injury was meant. When, however, the legislature specifies that the causal injury will control, then the court is bound by the words of the statute.

*Id.* at 1042–43, 8 N.W.2d at 711; *see* Iowa Code § 1386 (1939). We concluded the statute measured the limitations period from the date of the singular event, "without reference to the exigencies which arise from a trivial injury that later causes a compensable injury." *Otis*, 233 Iowa at 1043, 8 N.W.2d at 711.

In 1969, we considered another case in which the claimant based his claim for benefits on a singular traumatic event. *Mousel v. Bituminous Material & Supply Co.*, 169 N.W.2d 763, 764–65 (1969). While blacktopping roads in 1958, Mousel "received thermal burns about his face, neck, wrists and arms" when heated oil splattered him. *Id.* at 764. "He told his foreman about the burns but kept on working and saw no physician, nor was he asked to . . . ." *Id.* Almost eight years after his employment ended, Mousel saw a dermatologist who found the burns had caused lesions, and the lesions had ulcerated and become cancerous. *Id.* A deputy commissioner awarded benefits, but the commissioner's appeal decision "dismissed the claim as not timely filed," and the district court affirmed. *Id.* Applying the *Otis* rule, we also concluded Mousel's claim for workers' compensation benefits was untimely. *Id.* at 767.

A few years after *Mousel* was decided, however, the legislature enacted new language in the statute of limitations for workers' compensation claims. *See* 1977 Iowa Acts ch. 51, § 2 (codified at Iowa Code § 85.26 (1979)) (providing claims for workers' compensation benefits must be "commenced within two years from the date of the occurrence of the injury for which benefits are claimed," or if weekly

compensation benefits were paid under section 86.13, "within three years from the date of the last payment of weekly benefits").[5]

In 1980, we considered the amendment for the first time and concluded the discovery rule is generally available under section 85.26. *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 261 (Iowa 1980). In *Orr*, the claimant "was struck on the back of the neck by a falling plank" in May 1975. *Id.* at 257. However, he did not file for workers' compensation benefits until 1978. *Id.* Orr contended his action was timely because he was seeking benefits for headaches and, "despite reasonable diligence, he was unable to determine the headaches were caused by the May 1975 incident until September 1977." *Id.*

We acknowledged the *Otis* rule in *Orr*. *See id.* at 258 (noting that under *Otis*, the section 85.26 "limitations period started on the date of the accident"). We also noted that we had "not been required to reexamine the holding in *Otis* since the decision in *Mousel*." *Id.* at 259. We reasoned that significant developments since *Otis*—"uncertainty in the law after . . . *Mousel*, the general trend toward adoption of the discovery rule under similar statutes, and the context in which the [1977] amendment occurred"—led strongly toward making the discovery rule available under section 85.26. *Id.* at 260. Ultimately, "[b]ecause the [1977] amendment removed the language which had been determinative in *Otis*," we concluded "the legislature intended to remove the uncertainty following *Mousel* concerning whether the discovery rule was applicable under section 85.26." *Id.* at 260–61. This conclusion was

---

[5]The fact that section 85.26 does not refer to the discovery rule is not unusual. *See* 11 Larson § 126.05[2], at 126-19 ("The usual [workers' compensation] statute merely dates the period from the time of injury . . . , saying nothing about time of discovery of the nature of the condition.").

consistent with the proposition that "[c]ourts do not favor statutes of limitations. When two interpretations of a limitations statute are possible, the one giving the longer period to a litigant seeking relief is to be preferred and applied." *Id.* at 261. Accordingly, we overruled *Otis*. *Id.*

**C. Application of the Discovery Rule Since 1980.** *Orr* established that for discovery rule purposes, the statute of limitations on a workers' compensation claim does not begin to run until the claimant knows or should recognize the nature, seriousness, and probable compensable character of his or her injury. *See id.* at 257. We have applied this rule in several cases involving cumulative injuries or occupational diseases that developed over time. *See, e.g., Herrera v. IBP, Inc.*, 633 N.W.2d 284, 288 (Iowa 2001); *Ranney v. Parawax Co.*, 582 N.W.2d 152, 154–55 (Iowa 1998); *McKeever Custom Cabinets v. Smith*, 379 N.W.2d 368, 373 (Iowa 1985). A cumulative injury is deemed to have occurred when it manifests—and "manifestation" is that point in time when "both the fact of the injury and the causal relationship of the injury to the claimant's employment would have become plainly apparent to a reasonable person." *Oscar Mayer Foods Corp. v. Tasler*, 483 N.W.2d 824, 829 (Iowa 1992) (quoting *Peoria Cty. Belwood Nursing Home v. Indus. Comm'n*, 505 N.E.2d 1026, 1029 (Ill. 1987)). In such cases, "[t]he preferred analysis is to first determine the date the injury is deemed to have occurred . . . , and then to examine whether the statutory [limitations] period commenced on that date or whether it commenced upon a later date based upon application of the discovery rule." *Herrera*, 633 N.W.2d at 288.

This case, however, does not involve a cumulative injury or occupational disease. Rather, Baker suffered some pain immediately

from an identifiable singular event on May 23, 2010, but claims he was not aware of the nature, seriousness, or probable compensable character of his injury until at least June 20, 2010. Bridgestone contends, and the commissioner concluded, that the limitations period for Baker's claim expired on May 23, 2012, because the discovery rule has no application in such a case. We disagree with Bridgestone and the commissioner.

We have applied the discovery rule in several singular event cases since *Orr*. For example, in *Dillinger v. City of Sioux City*, the claimant fell into a pit and injured his back in October 1975 when a ladder gave way. 368 N.W.2d 176, 179 (Iowa 1985). He notified his employer of the incident but continued to work and did not immediately seek medical treatment. *See id.* at 178–79. Dillinger kept working for a year and a half "until the pain forced him to terminate his employment." *Id.* at 179. He filed for workers' compensation benefits in April 1978, about two years and six months after the work-related traumatic incident. *See id.* He contended he had timely filed the claim because he did not know his back injury was serious until he had surgery to remove a herniated disc in December 1977 and his physician opined the 1975 fall was a causal factor. *See id.* at 178–79. We concluded substantial evidence supported the agency's conclusion—which was unquestionably based on the discovery rule—that the action was timely. *Id.* at 182. Although Dillinger knew he injured his back when he fell, he continued to work despite his pain for several months after the traumatic incident. Substantial evidence supported the commissioner's finding that Dillinger did not know until later about the seriousness of his injury or its potentially permanent effect on his ability to work. *See id.*

In *Herrera*, we further explicated the meaning of the "seriousness" component of the discovery rule in the workers' compensation context.

We concluded the limitations period does not commence "until the employee . . . knows that the physical condition is serious enough to have a permanent adverse impact on the claimant's employment or employability." *Herrera*, 633 N.W.2d at 288. We have since repeated this formulation. *Larson Mfg. Co. v. Thorson*, 763 N.W.2d 842, 854–55 (Iowa 2009); *Midwest Ambulance Serv. v. Ruud*, 754 N.W.2d 860, 865 (Iowa 2008). In *Larson*, we reaffirmed that the phrase "permanent adverse impact" provides an abbreviated or alternative characterization of the three elements of the discovery rule test: nature, seriousness, and probable compensable character of the injury. *See Larson Mfg.*, 763 N.W.2d at 855. (connecting "permanent adverse impact" with the three-element test using the abbreviation "i.e.," meaning "in other words").

Bridgestone contends our decision in *Swartzendruber v. Schimmel*, 613 N.W.2d 646 (Iowa 2000), stands for the proposition that the discovery rule has no application in claims based upon a singular traumatic incident. In *Swartzendruber*, the claimant worked a full day stocking shelves at a grocery store but experienced pain in his hip and back by the time the work shift ended. *Id.* at 648. He awoke the next morning and could barely walk, with even more intense pain in his back and hip. *Id.* He promptly went to a hospital emergency room. *Id.* X-rays taken at that time revealed Swartzendruber's prosthetic hip was loose. *Id.* After seeing an orthopedic physician who recommended surgery, he never worked at the grocery store again. *Id.* He filed a workers' compensation proceeding two years and four days after the onset of hip pain—and two years and three days after x-rays revealed the hip joint defect—but less than two years after consulting the orthopedist who recommended surgery. *See id.* at 649.

Our decision in *Swartzendruber* discussed the analytical framework for cases presenting pure latent injuries and distinguished it from the framework controlling personal injury cases in which traumatic events cause latent manifestation of injuries. *Id.* at 650; *see LeBeau v. Dimig,* 446 N.W.2d 800, 802 (Iowa 1989). We then stated that under the latter framework, "the statute of limitations begins to run from the initial injury, not when the injury is later discovered. The discovery rule is actually applied . . . only to the first injury in 'traumatic event/latent manifestation' cases." *Swartzendruber,* 613 N.W.2d at 650 (citation omitted).

Bridgestone contends *Swartzendruber* stands for the proposition that the discovery rule does not apply if the claimant's injury arises from a single traumatic event. This contention flows from a misunderstanding of *Swartzendruber,* however, because we applied the discovery rule analysis in that case and concluded the rule did not save Swartzendruber's claim. *Id.* at 650–51. Our analysis in *Swartzendruber* focused specifically on the seriousness component of the rule:

> The seriousness component of the discovery rule exists so that "every minor ache, pain, or symptom" does not begin the statute of limitations. Thus, the failure to file a claim within two years of the occurrence of the injury may be excused if the claimant had no reason to believe the condition was serious. If the injury is trivial or minor, or the symptoms indicate no serious trouble, the seriousness component is not met.

*Id.* at 650 (citations omitted) (quoting 2B Arthur Larson, *Workers' Compensation* § 78.41(e), at 15-279 (1994)). We refrained in *Swartzendruber* "from pinpointing any specific event to establish the seriousness of an injury, such as going to a physician or missing work." *Id.* at 651. We further noted a "reasonable worker would not necessarily

be charged with knowledge of a compensable injury after experiencing back or hip pain following work which required bending." *Id.*

Just as not every ache, pain, or symptom is immediately known to be compensable, not every ache, pain, or symptom will satisfy the seriousness component of the discovery rule. *See id.* at 650. Consistent with our more recent decision in *Herrera*, not every ache, pain, or symptom will be understood as possibly suggesting a permanent adverse impact on a claimant's health or physical capacity for employment. *Herrera*, 633 N.W.2d at 288.

Our conclusion that the discovery rule could not save Swartzendruber's claim was based on the uncontroverted fact that an emergency room physician diagnosed Swartzendruber's loose prosthetic hip the morning after the onset of severe hip and back pain and referred him to an orthopedic specialist. *Swartzendruber,* 613 N.W.2d at 651. Because Swartzendruber did not file his claim within two years of the medical diagnosis of the serious hip joint defect and referral to the specialist, we concluded his claim was time-barred as a matter of law. *Id.*

However, the determination "of the question of what constitutes recognition of the seriousness of an injury or disease is a fact specific inquiry." *Id.* The facts in the case now before the court are distinguishable from those in *Swartzendruber.* Baker's condition was viewed as a minor muscle strain when Dr. Troll, the plant doctor, examined him on May 25 and at the time of follow-up appointments in July and September. Dr. Troll initially prescribed only over-the-counter medications for pain and advised Baker to perform stretching exercises during the several weeks after the incident. Additionally, Baker missed no work and continued to perform his regular job duties at his own pace

without specific lifting limitations for several months after the May 23 incident. Unlike the claimant in *Swartzendruber,* Baker was not immediately referred to a specialist. The record reveals instead that Dr. Troll ordered no prescription medication, x-rays, or diagnostic scans for Baker until December 2010. Although none of these facts are dispositive on the issue of seriousness, when taken together with the other evidence in this record they clearly distinguish this case from *Swartzendruber* and preclude a summary resolution of the limitations issue.

**D. Synthesis.** Whether a work-related injury arises cumulatively because of repetitive trauma or from a singular traumatic event, the agency must apply the discovery rule when it is properly raised and substantial evidence supports it. In cumulative injury cases, the agency applies the rule by deciding "whether the statutory period commenced on [the manifestation] date or whether it commenced upon a later date." *Herrera,* 633 N.W.2d at 288. In cases alleging injuries arising from a singular event, the agency must apply the rule in deciding whether the limitation period commenced on the date of the singular event or at some later time. If the claimant did not know—or did not have knowledge of facts sufficient to trigger a duty to investigate—"the nature, seriousness[,] and probable compensable character" of their injury, *Orr,* 298 N.W.2d at 261, the discovery rule tolls the limitation period until the claimant gains that knowledge. The fact an initial accident is traumatic does not necessarily provide immediate notice of seriousness or compensability. *See Ga. Pac. Corp. v. Taplin,* 586 So. 2d 823, 827 (Miss. 1991).

As we have explained, claimants and employers have a unique cooperative relationship in the workers' compensation context that has no counterpart in the tort arena. The discovery rule promotes that

relationship because it decreases the likelihood that workers' compensation proceedings will be filed before the nature, seriousness, and probable compensability of claims are known—especially during periods when employers are interacting cooperatively with claimants and providing them with appropriate medical services in the aftermath of a work-related injury that is not perceived as serious. *Cf. Vossoughi v. Polaschek,* 859 N.W.2d 643, 650 (Iowa 2015) (concluding a person with a possible legal malpractice claim should not have to initiate suit and sabotage an ongoing cooperative attorney–client relationship when the person's injury is only speculative).

Courts in several other jurisdictions have applied the discovery rule under circumstances analogous to those presented here, often noting an onset of back pain does not necessarily indicate a serious injury. *See, e.g., Freeman v. Tiffany Stand & Furniture,* 726 S.W.2d 294, 295–96 (Ark. Ct. App. 1987) (concluding a claimant did not know the extent of his lumbar injury for statute-of-limitations purposes when the pain was manageable with aspirin and he kept working); *Sevin v. Schwegmann Giant Supermarkets, Inc.,* 652 So. 2d 1323, 1324, 1327 (La. 1995) (concluding a claim was timely when the initial treatment involved only rest, physical therapy, and medication, but the claimant continued experiencing pain and later returned to the doctor); *Loud v. Dixie Metal Co.,* 475 So. 2d 122, 124–25 (La. Ct. App. 1985) (rejecting an employer's contention that "since [the claimant] suffered immediate pain, he was aware of his compensation claim sufficiently" to commence the limitations period); *Williams v. Dobberstein,* 157 N.W.2d 776, 778 (Neb. 1968) (rejecting "the defendants' position that since the [claimant] knew that he had an accident, and had pain which he associated with the accident[,] . . . the statute of limitations began to run on the date of the

accident"); *Montgomery v. Milldale Farm & Live Stock Improvement Co.*, 246 N.W. 734, 735 (Neb. 1933) (concluding a claim was not time-barred when the claimant initially "relied . . . upon the advice of his physicians that his injuries were muscular and temporary" rather than serious and permanent); *White v. N.D. Workers Comp. Bureau*, 441 N.W.2d 908, 911 (N.D. 1989) ("[W]e disagree with the Bureau's argument that White's claim is barred because he knew the origin of his back pain was the fall and because he sought medical attention for his back."); *Burcham v. Carbide & Carbon Chems. Corp.*, 221 S.W.2d 888, 892 (Tenn. 1949) (ascribing significance to the company doctor's initial and minimal diagnosis); *Teague v. Tex. Emp'rs' Ins. Ass'n*, 368 S.W.2d 643, 644–45 (Tex. Civ. App. 1963) ("We . . . cannot find that [claim]ant had any symptoms other than constant pain to warn him that he might have been injured in a manner other than the trivial injury first reported to him by the doctor . . . .").

The commissioner erred in concluding the discovery rule has no application in this case. Under the circumstances presented here, we conclude the district court correctly ordered a remand for the agency's application of the discovery rule.[6] We therefore affirm the district court's decision. On remand before the commissioner, Baker must "meet his burden . . . to prove a factual basis for application of the rule." *Orr*, 298 N.W.2d at 262.

---

[6]Although the deputy's arbitration decision included a finding that Baker understood the seriousness of his injury before June 20, 2010, the deputy also found no quarrel with Baker's testimony that he was unaware of the possibility that his injury would have a permanent impact on his employment until the summer or fall of that year. Given these findings and the record evidence detailed above, we are unable to conclude the final agency action provides a basis for reversing the district court's decision and affirming the agency's decision on the alternative ground that application of the discovery rule would have produced the same result as a matter of law.

**IV. Conclusion.**

Whether a work-related injury arises because of a single event or develops cumulatively over time, the discovery rule applies in determining whether a workers' compensation claim has been filed within two years after the occurrence of the injury under section 85.26(1) (2009).  That limitation period does not begin to run until the claimant knows or in the exercise of reasonable diligence should know "the nature, seriousness[,] and probable compensable character" of his or her injury.  *Id.* at 261.  Because the district court reached the same conclusion, we affirm its judgment and remand to the district court with instructions to remand this matter to the commissioner for further proceedings consistent with this opinion.

**AFFIRMED.**