*780 HECHT, Justice
(dissenting).
Although the standard devised by 'the majority for determining whether an employer authorized medical care could have been adopted by the legislature, I do not believe it was. Accordingly, I respectfully dissent.
In relevant part, section 85.27(4) provides:
For purposes of this section, the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care, If the employer chooses the care, the employer shall hold the employee harmless for the cost of care until the employer notifies the employee that the employer is no longer authorizing all or any part of the care and the reason for the change in authorization. An employer is not liable for the cost of care that the employer arranges in response to a sudden emergency if the employee’s condition, for which care was arranged, is not related to the employment.
Iowa Code § 85.27(4) (2009) (emphasis added).
The majority concludes this statute is ambiguous. It is not. If the “statutory language is plain and its meaning clear, ‘we do not search for legislative intent beyond the express terms of the statute.’ ” Denison Mun. Utils. v. Iowa Workers’ Comp. Comm’r, 857 N.W.2d 230, 235 (Iowa 2014) (quoting State Pub. Defender v. Iowa Dist. Ct., 663 N.W.2d 413, 415 (Iowa 2003)).
As the majority correctly observes, it is well established that an employer “has the right to choose the care” for work-related injuries. Iowa Code § 85.27(4). This right to choose the care refers to an employer’s power to designate which provider(s) of medical care will be authorized to treat the employee’s injury. See id. Such control comes at a price. First, employers choosing providers of care generally concede their employees’ injuries are compen-sable.[19] See Bell Bros. Heating & Air Conditioning v. Gwinn, 779 N.W.2d 193, 202 (Iowa 2010) (noting employers receive the right to choose care “[o]nce compensa-bility - is acknowledged”); 15 James R. Lawyer, Iowa Practice Series: Workers’ Compensation § 16:2, at 199 (2015) [hereinafter Lawyer] (“If the employer denies the compensability of an injury under the act, it cannot ... seek to guide the care.”). Second, employers hold their employees harmless for the cost of the care provided by the chosen providers. Iowa Code § 85.27(4); 15 Lawyer § 15:2, at 198-99.
Employers have significant power in the process of furnishing medical services as they select who shall be authorized providers. Employers can confer authorization of care by a provider; they can also reasonably terminate, it. Authorization lasts “until the employer notifies the employee that the employer is no longer authorizing all or any part of the care and the reason for the change in authorization.” Iowa Code § 85.27(4). The notice of a change in authorization does not conclusively cut off the employer’s obligation to furnish medical services under section 85.27(1); it does, however, oblige the injured employee to prove medical causation as to any services obtained from unauthorized providers for treatment of a. work-related injury. 15 Lawyer § 15:2, at 199 (noting the employer’s obligation to provide medical services under section 85.27 extends to unauthorized medical care that “is beneficial in *781 improving the worker’s condition”). The commissioner applied the clear language of section 85.27(4) and concluded Quality Egg is obligated to pay for medical expenses Ramirez-Trujillo incurred for treatment by the authorized provider after September 2009 because Quality Egg failed to notify Ramirez-Trujillo that further treatment by that provider was not authorized. In this instance, I believe the commissioner correctly applied the statute.
The majority fashions á new standard for determining whether an employer’s authorization of care can terminate notwithstanding the employer’s failure to notify their injured employee of the termination. The new standard is problematic because it is not found within section 85.27(4). The statute is not ambiguous, so we need not apply rules of interpretation or develop new standards to divine its meaning. Section 85.27(4) expressly confers upon employers the right to “choose the care” and prescribes the consequences of án employer’s choice of medical care for the employee. Iowa Code § 85.27(4). ' Among the consequences is the employer’s obligation to hold employees harmless for the cost of services supplied by authorized providers. Id.
The legislature' expressly prescribed only one safe harbor in which the employer’s choice of care does not result' in a concession of compensability: “An employer is not liable for the cost of care that the employer arranges in response to a sudden emergency if the employee’s condition, for which care was arranged, is not related to the employment.” - Id.' The unmistakable rationale for this safe harbor is that- in emergent scenarios, employers do not have time to assess whether the injury or condition for which treatment is urgently needed arose out of and in the course of employment. Notably, Quality Egg makes no claim in this case that its authorization- of the Wright Medical Center as a provider was granted in a sudden emergency.
Section 85,27(4) expressly exempts employers from their statutory duty to hold employees harmless from the cost of medical services provided by authorized providers if employers give their employees notice that the authorization is terminated or changed. Id, Under the clear meaning of the statute, the employer’s authorization of care for treatment of a compensable injury continues until the employer gives the employee notice of a change. The majority’s new standard announces that an employer’s, notice terminating or changing authorization is not the only means of terminating authorization and avoiding the duty to hold the employee harmless. Under .the new standard, employers can now avoid the consequences, of choosing care — even if they fail to give the statutory notice — by proving the employee, knew or should have known the care was beyond the scope or duration. of the employer’s authorization.
The majority’s‘ new standard allowing employers to avoid the consequences of choosing care without giving notice as contemplated in section 85.27(4) is problematic for several reasons. First, it is incompatible with the clear language of the statute indicating' á' provider is authorized until notice to the contrary is given. Second, I think the new standard will' create confusion • and uncertainty among parties in workers’ compensation cases about whether medical care is authorized. Confusion and uncertainty will spawn more litigation — art untoward consequence for a workers’ compensation system intended to be simple, quick, and inexpensive. See, e.g., Baker v. Bridgestone/Firestone, 872 N.W.2d 672, 677 (Iowa 2015); Morrison v. Century Eng’g, 434 N.W.2d 874, 877 (Iowa 1989); Flint v. City of Eldon, 191 Iowa 845, 847, 183 N.W. 344, 345 (1921). In place of the former predictable bright-line *782 rule allocating to employers liability for medical care provided by authorized providers for work-related injuries until the authorization is withdrawn by notice, the majority’s new standard encourages additional fact-based inquiries about what the employee knew about the scope and duration of a provider’s authorization and when she knew it. Employers will be motivated to litigate whether injured employees knew or should have known the care provided was for a condition outside the scope of the employer’s authorization, or whether employees knew or should have known the authorization had expired under the circumstances even if the employer gave no notice of expiration as contemplated in section 85.27(4). Litigating these questions will make workers’ compensation proceedings slower and more expensive as lawyers and fact-finders scrutinize the often complex factual circumstances addressed in the standard’s numerous factors. As with any multifactored standard, fact-based outcomes will be more unpredictable than outcomes produced by the commissioner’s bright-line rule. See United States v. Mead Corp., 533 U.S. 218, 241, 121 S.Ct. 2164, 2178, 150 L.Ed.2d 292, 312 (2001) (Scalia, J., dissenting) (criticizing “th’ol’ ‘totality of the circumstances’ test” because it thwarts predictability and hampers “litigants who want to know what to expect”). With due respect, the clear language of the statute and its bright-line allocation of responsibility for care provided by authorized providers prior to notice of a change is far superior to (and far simpler than) the majority’s new unwieldy standard.
I agree completely with the majority’s conclusion that employees are not generally equipped to assess whether the condition for which they consult an authorized provider is attributable to a work-related injury. I am convinced this very understanding informed the legislature’s choice of a bright-line rule allocating liability to employers for the cost of care provided by those they choose until employers give notice of the withdrawal or change of the provider’s authorization. Iowa Code § 85.27(4) (“[T]he employer shall hold the employee harmless for the cost of care until the employer notifies the employee that the employer is no longer authorizing all or any part of the care and the reason for the change in authorization.”).
The majority designs the new standard to remedy unfairness it perceives in the risk that an employer might be required to pay for medical services provided by an authorized provider for a condition ultimately found not to have been causally connected to a compensable injury. But this risk is one the legislature built into the system as part of the delicate balance between the interests of injured employees and their employers in workers’ compensation cases. Bell Bros., 779 N.W.2d at 207 (“[T]he overall approach of section 85.27(4) [is] to balance the control given to the employer with safeguards for the employee.”); see also Baker, 872 N.W.2d at 676-77 (describing the “series of tradeoffs” inherent in the workers’ compensation system). Employers receive the opportunity to control the care under section 85.27(4). The price of this opportunity for control, as I have suggested above, includes employers’ concessions of (1) the causal connection between the employment and the injury, and (2) medical causation — medical treatment reasonable in amount and necessary to treat the compensable injury. See Bell Bros., 779 N.W.2d at 202.
I acknowledge the commissioner’s decision in this case presents an instance in which an employer paid a price for its decision to control the medical care. The commissioner’s decision held Quality Egg liable for some medical expenses the commissioner ultimately found causally unrelated to the compensable injury Ramirez- *783 Trujillo sustained in August 2009.[20] The rationale for the commissioner’s decision was based on Quality Egg’s failure to give notice under section 85.27(4) that it had terminated the care provider’s authority to treat Ramirez-Trujillo’s back. In my view, the majority’s newly-conceived multi-factored standard for limiting the scope and duration of Quality Egg’s authorization disrupts the balance of interests set by the legislature. The balance prescribed by the legislature afforded Quality Egg the opportunity to terminate its provider’s authority to provide services by giving a simple notice to Ramirez-Trujillo. By giving such a notice, Quality Egg could have shifted the burden of proving medical causation- back to Ramirez-Trujillo. But it failed to give the notice, and the commissioner therefore correctly ordered that Ramirez-Trujillo be held harmless for the cost of the care.
Employers’ responsibility to hold injured employees harmless for care provided by authorized providers absent a termination notice — a feature of the delicate balance between the competing interests of employers and employees — does not impose an onerous burden. After choosing the care for injured employees, employers and their insurers routinely and regularly monitor the care through full access to medical records and information.[21] Armed with detailed information about their authorized providers’ services and their employees’ responses to treatment, employers are well-equipped to meet the responsibilities assigned to them under section 85.27(1) and protect their interests under section 85.27(4). Because they control the care under the statutory scheme, employers are readily able to give employees notice of “change[s] in authorization” when the employer chooses. Iowa Code § 85.27(4). This means of changing employers’ authorizations of care renders the majority’s multifactored standard completely unnecessary. In this case, Quality Egg could easily have withdrawn Wright Medical Center’s authority to treat Ramirez-Trujillo’s back at Quality Egg’s expense in September 2009 when Ramirez-Trujillo was discharged from care, or in December 2009 when she returned to the provider with complaints arising after she shoveled snow — but it did not. .
Because I .believe the majority’s new standard is unsupported by the clear language of section 85.27(4) and likely to create confusion and spawn more litigation, I would affirm the court of appeals decision and the commissioner’s application of the statute.

. Compensable injuries are those arising in the course and'scope of employment. Iowa Code § 85.3(1).

. All of the disputed medical expenses were for treatment of Ramirez-Trujillo’s back pain, not some part of the anatomy unaffected by the work-related injury. The legislature’s . bright-line hold harmless rule did not impose on Ramirez-Trujillo the burden of sorting out before seeking treatment from the authorized provider whether the back pain she experienced after September 30, 2009, was causally related to the 2009 injury or some other unrelated activity such as scooping snow. The legislature reasonably, in my view, concluded such complex determinations are typically beyond the ken of lay people and are best left to medical experts. In short, the hold harmless obligation worked quite sensibly under the circumstances presented in this case.

. The employee or claimant making a claim for benefits must release “all information ... concerning [their] physical or mental condition relative to the claim.” Iowa Code § 85.27(2).