# IN THE COURT OF APPEALS OF IOWA

No. 16-0236
Filed January 11, 2017

**DONALD A. WESTLING,**
     Petitioner-Appellant,

**vs.**

**HORMEL FOODS CORPORATION,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Polk County, Carla T. Schemmel,

Judge.


     A workers' compensation claimant seeks to overturn the commissioner's

denial of alternative care under Iowa Code section 85.27(4) (2011).  **AFFIRMED.**


     Mark S. Soldat of Soldat & Parrish-Sams, P.L.C., West Des Moines, for

appellant.

     Valerie A. Landis of Hopkins & Huebner, P.C., Des Moines, for appellee.


     Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Claimant Donald Westling contends the workers' compensation commissioner wrongly denied his application for alternate medical care under Iowa Code section 85.27(4) (2011). Westling's application sought treatment for his right knee, which he injured in 1993 and 1996 while working at Hormel Foods Corporation. After several surgeries, including a total knee replacement in 2005, Westling continued to experience pain in his knee and received authorization from Hormel to see orthopedic surgeon Michael Crane. After examining Westling's knee, Dr. Crane recommended Westling wait until he had "more trouble" before considering revision surgery. Westling asserts Dr. Crane's August 9, 2011 "diagnostic examination" did not constitute "treatment" under section 85.27(4).

The commissioner decided Westling did not meet his burden to show he was entitled to alternate medical care. In the commissioner's view, reasonable care included services "necessary to diagnose the condition" and Westling did not show the services provided by Dr. Crane were unreasonable. The district court ruled the commissioner identified sufficient facts to justify her denial of alternate care. Because the record amply supports the commissioner's conclusion Westling did not show the authorized care was unreasonable, we affirm.

## I. Facts and Prior Proceedings

Westling worked for Hormel for thirty years, starting in 1976. During that time, Westling twice injured his right knee at the meatpacking plant and received workers' compensation payments for those injuries, including ongoing medical

benefits. Westling underwent several surgeries on his knee, including one in 1998 performed by Dr. Crane. Westling suffered deep venous thrombosis (DVT) as a result of that surgery. After those complications, Westling opted to be seen by Dr. Adrian Wolbrink, who performed a total knee replacement in 2005. Westling retired from Hormel the following year and moved to Milford, Iowa.

Experiencing continued problems with his knee, Westling went to his Milford family-care provider in June 2011, and he was referred to Dr. Gregory Alvine with Core Orthopedics in Sioux Falls, South Dakota. Hormel instead approved an appointment with Dr. Crane in Mason City. On October 19, 2011, Dr. Crane performed a clinical examination of Westling's knee, as well as ordering and reviewing x-rays. Westling testified Dr. Crane spent "probably ten minutes" talking to him during the appointment.

Dr. Crane made the following notes regarding the appointment:

> Donald Westling is seen today for evaluation of his right total knee replacement done in 2005. Prior to that he had a proximal tibial osteotomy in 1996-1997. He states the knee hurts off and on. It feels like it will give out on occasion. It clicks and makes noise. He is [sixty-two] years old.

Dr. Crane reported on the physical examination:

> On examination of the knee he extends well to 0 degrees and flexes to 100-105 degrees. Medial and lateral instability is not a significant problem, but he does have some anterior posterior instability. He also has a bit of an effusion I believe. He has no evidence of redness to suggest an infectious type process. The right leg also shows signs of brawny edema. He has apparently had two blood clots on that side.

Dr. Crane also compared Westling's new x-rays to his previous images: "His x-rays look pretty good, although there is some lucency about the medial aspect of the tibial component. This has not changed since 2006."

Dr. Crane offered the following impression and recommendations:

I would not suggest a revision at this point—with the lucency medial there is a potential it could fracture . . . . With his previous complications I would suggest he wait until he has more trouble to consider revision . . . . He should be seen in about [two] years with an x-ray.

Westling expressed dissatisfaction with Dr. Crane's recommendations and again requested a referral to Dr. Alvine, which Hormel denied. Instead, Hormel had Dr. Crane's recommendations reviewed by Dr. John Albright, a professor of orthopedic surgery at the University of Iowa Hospitals and Clinics. Dr. Albright concurred with Dr. Crane's assessment and plan, writing:

I agree that Mr. Westling should follow with regular Xrays done every year or two. I would not recommend any revision surgery without any significant clinical or radiographic evidence indicating further surgical intervention. In addition, medical co-morbidities necessitating chronic Coumadin therapy increase the risks associated with any surgical procedure, especially a revision surgery, and should be seriously considered in any surgical recommendation. This is another reason to avoid further surgery as long as possible.

In October 2011, Westling filed an original petition with the workers' compensation commissioner for alternate medical care, specifically seeking a referral to Dr. Alvine.[1] At an administrative hearing in April 2012, Westling testified he wanted to see Dr. Alvine because he was a knee specialist and Westling believed he would provide "better care" than Dr. Crane. Westling said the distance to the appointments was not a factor. Westling acknowledged he had not previously filed any documents indicating his dissatisfaction with the treatment provided by Dr. Crane "because that was Hormel's primary doctor they

---

[1] Westling later re-captioned his petition as a review-reopening, but he still pursued the alternate-care issue.

told me to go to." Westling testified he did not know what to expect to receive from Dr. Alvine as far as suggestions for further care.

The deputy commissioner determined Westling had not met his burden to prove the medical care provided by Hormel was unreasonable or ineffective and denied Westling's application for alternate medical care. The commissioner affirmed the deputy's decision in April 2013. Westling sought judicial review, and the district court noted the commissioner's findings of fact were "not extensive." The judicial review decision stated: "It is unclear to the court how these findings of fact are relevant to the issues of whether the authorized care was (1) prompt, (2) reasonably suited to treat the injury, and (3) without undue inconvenience to the claimant." The district court remanded for the commissioner to set forth the facts relied upon in determining Westling had failed to meet his burden of proof on the alternate-medical-care issue.

In February 2015, the commissioner filed a remand decision, adding additional references to the evidence presented at the April 2012 hearing. Westling again sought judicial review. On January 31, 2016, the district court upheld the commissioner's decision, concluding "the agency acted as directed on remand and supplied sufficient facts to justify its decision to deny alternate care benefits" to Westling. Westling now appeals that judicial review order.

## II. Scope and Standards of Review

Iowa Code chapter 17A governs judicial review of rulings from the workers' compensation commissioner. *Baker v. Bridgestone/Firestone*, 872 N.W.2d 672, 675 (Iowa 2015). Our scope of review is for correction of errors at law. *See Oswald v. Bulkmatic Transp.*, No. 02-2043, 2003 WL 22461737, at *1

(Iowa Ct. App. Oct. 29, 2003). Both the district court and our court act in an appellate capacity when reviewing an agency decision. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). If our appellate assessment is the same as the district court, we will affirm, and if not, we will reverse. *See id.*

The particular standard of review from section 17A.19(10) that we apply depends on the issues raised on appeal. *See Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). Because those standards of review vary widely, it is "essential for counsel to search for and pinpoint the precise claim of error on appeal." *Id.* (citation omitted). In his appellant's brief, Westling fails to pinpoint the standard of review, instead listing seven subsections—(c), (d), (f), (i), (j), (m), and (n). Because Westling's argument mentions "substantial evidence" three times and does not challenge or discuss specific legal interpretations made by the commissioner, we can only assume he is limiting his challenge to section 17A.19(10)(f).[2] Where the appellant is alleging factual error, we must determine if the commissioner's findings are supported by substantial evidence.[3] *See Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006) (explaining question on

---

[2] Iowa Code section 17A(10) states:
> The court shall reverse, modify, or grant other appropriate relief from agency action . . . if it determines that substantial rights of the person seeking judicial relief have been prejudiced because the agency action is . . . :
> . . . .
> (f) Based upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole.

[3] The legislature defined "substantial evidence" as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1).

appeal is not whether the evidence supports a finding different from the factual finding made by the commissioner but whether the evidence supports the finding actually made); *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 465 (Iowa 2004) (recognizing "factual determinations in workers' compensation cases are clearly vested by a provision of law in the discretion of the agency" (citation omitted)). To the extent Westling is challenging the commissioner's interpretation of the word "treatment" and other terms in section 85.27(4), our level of deference depends on whether the legislature "clearly vested" the authority to interpret the term "in the discretion of the agency." *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). *Compare* Iowa Code § 17A.19(10)(c), *with id.* § 17A.19(10)(*l*). "If the agency *has not* been clearly vested with the authority to interpret a provision of law," then we must reverse if the agency's interpretation is erroneous. *Burton*, 813 N.W.2d at 256. "If the agency *has* been clearly vested with the authority to interpret a statute," then we may only disturb the agency's interpretation if it is "irrational, illogical, or wholly unjustifiable." *Id.* (quoting 17A.19(10)(*l*)). Our supreme court has declined to give deference to the commissioner's interpretation of various provisions in chapter 85. *See Evenson v. Winnebago Indus., Inc.*, 881 N.W.2d 360, 369 (Iowa 2016) (collecting examples). We follow that same course here.

Westling also disputes whether the commissioner's February 2015 remand decision complied with the district court's instructions.[4] The purpose of

---

[4] Westling's brief asserts:

> Suffice it to say that in the district court's 1/31/16 second judicial review decision, . . . it neither adhered to the law of the case or the rationale of the prior district court decision, nor actually scrutinized whether the acting

section 17A.16(1) is to allow the reviewing court to determine when the commissioner is making a determination of fact and when the commissioner is engaging in the application or interpretation of law so that reviewing courts may properly review the relevant portion of the decision. *See Dodd v. Fleetguard, Inc.*, 759 N.W.2d 133, 137 (Iowa Ct. App. 2008). Our supreme court has held the commissioner "need not discuss *every* evidentiary fact and the basis for [her] acceptance or rejection so long as the commissioner's analytical process can be followed on appeal." *Bridgestone/Firestone v. Accordino*, 561 N.W.2d 60, 62 (Iowa 1997).

### III. Analysis

Alternate medical care is governed by the following statute:

> [T]he employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care . . . . The treatment must be offered promptly and be reasonably suited to treat the injury without undue inconvenience to the employee. If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, . . . following which the employer and the employee may agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.

Iowa Code § 85.27(4).

Under this statute, the employer must provide medical treatment that is (1) prompt, (2) reasonably suited to treat the claimant's injury, and (3) without undue inconvenience to the claimant. *Good v. Tyson Foods, Inc.*, 756 N.W.2d

---

commissioner complied with the 1/14/14 remand instructions, section 17A.16(1) . . . . Instead, it essentially utilized a substantial-evidence "rubberstamp."

42, 45 (Iowa Ct. App. 2008). If the employer's offerings do not meet these three criteria, the commissioner may order alternate care. *See R.R. Donnelly & Sons v. Barnett*, 670 N.W.2d 190, 195 (Iowa 2003).

By challenging Hormel's choice of Dr. Crane as the treating physician, Westling assumed the burden of proving the authorized care with Dr. Crane was unreasonable. *See Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 123 (Iowa 1995) ("Determining what care is reasonable under the statute is a question of fact."). Westling's desire for care by a different doctor is "not determinative" on the issue of alternate care. *Id.* at 124. "[T]he employer's obligation under the statute turns on the question of reasonable necessity, not desirability." *Id.*

On appeal, Westling does not seriously allege he was entitled to alternative care because his appointment with Dr. Crane was not prompt or convenient. Instead, Westling maintains his appointment with Dr. Crane "(in which no treatment whatsoever was offered), did not and could not constitute treatment, let alone reasonable or effective treatment per section 85.27(4)." Westling contends: "On 8/19/11, Dr. Crane did nothing to improve Westling's condition. *Ergo*, the district court erred prejudicially by affirming the acting commissioner's 2/11/15 remand decision, and alternate care should be granted to Westling as a matter of law."

We disagree that as a matter of law a diagnostic appointment—where the doctor takes a patient history, performs a clinical examination, orders new x-rays and compares those images to prior x-rays, and considers this particular patient's previous complications before recommending against revision surgery at the present time and scheduling additional x-rays in two years—cannot be

considered treatment under section 85.27(4). The employer's obligation under section 85.27(4) is to "furnish reasonable services and supplies" to treat the injured employee. Medical services include making a diagnosis. *See generally Baker*, 872 N.W.2d at 678 ("In promptly furnishing reasonable medical care to injured employees under chapter 85, employers are empowered to substitute their judgment for that of their injured employees on the important question of which medical professionals are best suited to *diagnose and treat* work-related injuries." (emphasis added)).

The test for the commissioner to order alternate care is whether the care authorized by the employer was effective, that is, reasonably suited to treat the claimant's injury. *Pirelli–Armstrong Tire Co. v. Reynolds*, 562 N.W.2d 433, 437 (Iowa 1997). Care by a physician of the claimant's choosing is appropriate after "the physician selected by his employer has failed or refused to give necessary treatment or has been unsuccessful in his treatment." *Id.*

Westling did not present evidence to the commissioner that the wait-and-see approach advocated by Dr. Crane was unreasonable. Westling offered no proof Dr. Crane refused to give "necessary treatment." In fact, the commissioner relied on Hormel's "second opinion regarding the reasonableness of Dr. Crane's medical treatment" in deciding "the treatment offered to claimant was reasonable care." Like Dr. Crane, Dr. Albright did not recommend further surgery based on the current condition of the knee, instead recommending follow-up x-rays every year or two. The commissioner also considered Westling's testimony that he did not know whether "he would consider surgery even if Dr. Alvine would

recommend additional surgical procedures, given claimant's preexisting DVT condition."

The commissioner identified the essential information in the record supporting her rejection of Westling's request for alternate care. We, like the district court, conclude the commissioner's decision denying alternate care complied with section 17A.16(1) and was supported by substantial evidence. Therefore, we affirm the judicial review order.

**AFFIRMED.**